KUHL v. ARK. STATE BOARD OF CHIROPRACTIC EXAMINERS.

5-2874                                          364 S. W. 2d 790

Opinion delivered February 4, 1963.

[Rehearing denied March 11, 1963.]

*Dan McCraw,* for appellant.

*Martin, Dodds & Kidd,* for appellee.

SAM ROBINSON, Associate Justice. The appellants, William E. and Robert J. Kuhl, are chiropractors authorized to practice in the State of Arkansas. On the 8th day of November, 1960, the Arkansas State Medical Board filed a complaint in the Pulaski Chancery Court, wherein it was alleged that the above named appellants were engaged in the illegal practice of medicine in this state. The complaint alleged that the appellants were doing about a dozen different things that constituted the practice of medicine.[1]

On the 5th day of June, 1961, the Arkansas State Board of Chiropractic Examiners, acting on authority of Ark. Stats. 72-407, filed charges against appellants alleging that they had illegally engaged in the practice of medicine as charged in the complaint which had been filed in the Chancery Court by the Medical Board; and further, that they were guilty of unethical conduct. A summons was issued and served.

On June 13, 1961, appellants filed a motion asking that they be given an immediate hearing on the charges which had been filed on June 5. The hearing was set for June 28. On that date when the matter came on to be heard on the merits, appellants made an oral motion that the Chiropractic Board be required to make the charges more definite and certain. The motion was overruled

---

[1] See *Miller* v. *Reed,* 234 Ark. 850, 355 S. W. 2d 169.

and the Board proceeded with the hearing. After hearing all the evidence produced, the Chiropractic Board ordered that appellants' license as chiropractors be revoked. By *certiorari* appellants took the case to Circuit Court where the order of the Board was affirmed.

On appeal to this court appellants contend, first, that the Board's action in overruling the motion that the charges be made more definite and certain was error that calls for a reversal. We do not agree. The charges were filed by the Board and summons issued and served on June 5, 1961. Allegations charging appellants with the illegal practice of medicine had been filed in Chancery Court by the Medical Board November 18, 1960, more than six months before the charges were filed by the Chiropractic Board. Moreover, during the interim between June 5, 1961 and the time of the hearing on June 28, the only thing filed by appellants was a request for an immediate hearing. Not until the day of the hearing on June 28, did appellants ask that the charges be made more definite and certain. In these circumstances there was no error in denying the motion.

While the matter was pending in the Circuit Court appellants filed a motion asking that the Chiropractic Board be required to deliver to the attorneys for appellants "all books, records, correspondence and minutes pertaining to any disciplinary action taken or contemplated against any chiropractor since the creation of the board for the purpose of permitting defendants to inspect same and copy if desired". The motion was overruled by the trial court. We fail to see in what manner the action taken by the Board in some other case would be relevant to the case at bar.

After the taking of testimony before the Chiropractic Board and while the matter was still in the hands of the Board, Dr. Murphy, a member of the Board, called a doctor on the staff of the Missouri Pacific Hospital and questioned him about certain facts to determine if appellant, Dr. William Kuhl, had testified truthfully or falsely concerning his dealings with the hospital and the treatment of Missouri Pacific Hospital patients. Of

course, if the judge of a court or a juror adopted such means to ascertain the facts, we would quickly hold that it was error to obtain evidence in that fashion. But members of the Chiropractic Board are not lawyers and they are not jurors with a judge available to tell them what they may or may not do. In all probability, members of the Chiropractic Board know nothing about the rules of evidence and perhaps they could never hear an involved case without making errors in admitting or rejecting evidence, if their action in that respect were tested by the rules of evidence applicable to a court of law.

In *Bockman* v. *Arkansas State Medical Board,* 229 Ark. 143, 313 S. W. 2d 826, we had the same point under consideration and there we said: ''This is not a criminal prosecution, in which the accused is entitled to be confronted by the witnesses against him. It is an administrative proceeding, civil in nature, . . .''. It is further stated in that case that the Board could not proceed at all if it were required to observe technical rules of evidence. Also, we said in the Bockman case: ''Upon this point it is our rule in proceedings like this one that the board's action will not be set aside on *certiorari* unless there is an entire absence of substantial evidence to sustain the findings, . . .''. But even so, we would send this case back to the Board of Chiropractic Examiners for a new trial if it appeared that appellants did not receive a fair trial, or that Dr. Murphy's action in talking to a doctor at the Missouri Pacific Hospital, and perhaps other chiropractors, was in any way prejudicial to appellants; but we cannot see how appellants were prejudiced in any manner by the conversations, because regardless of what was said, and notwithstanding anything that may have been said, there is competent evidence in the record which shows that appellants' license to practice chiropractics must be revoked.

Even though the Board is not bound by strict rules of evidence, the essential rules of evidence by which rights are asserted or defended must be preserved. But a hearing does not cease to be fair merely because rules of evidence and procedure applicable in judicial proceed-

ings have not been strictly followed, or because some evidence has been improperly rejected or received. *Bilokumsky* v. *Tod,* 263 U. S. 149. To render a hearing unfair, the defect or practice must have been such as might have lead to a denial of justice, or there must have been absent one of the elements of due process.

Ark. Stats. 72-604 defines the practice of medicine, in part, as follows: ". . . suggesting, recommending, prescribing or administering any form of treatment, operation or healing for the intended palliation, relief, or cure of any physical or mental disease, ailment, injury, condition or defect of any person with the intention of receiving therefor, either directly or indirectly, any fee, gift, or compensation whatsoever; . . .".

A chiropractic license entitles "the holder thereof to adjust by hand the displaced segments of the vertebral column and any displaced tissue in any manner related thereto for the purpose of removing any injury, deformity or abnormality of human beings". Ark. Stats. 72-404.

Of course if any information Dr. Murphy obtained, not in the presence of appellants, had to be relied on in any respect to support a finding that appellants unlawfully engaged in the practice of medicine, the judgment would have to be reversed; but such is not the case. The printed matter on appellants' statement of account form contains a list of the treatments they hold themselves out as giving, which are listed as follows:

"(1) Adjustments, (2) Vitamins or Supplements, (3) Plasmatic Therapy, (4) Traction, (5) Muscle Stimulation, (6) Diathermy, [The generation of heat in tissues of the body, as a result of the resistance presented by the tissues to electric currents of high frequency that is forced through them.] (7) Ultrasonic Therapy, [Super sound wave treatment] (8) Infrared Therapy, [Pertaining to or designating those rays which lie just beyond the red end of the visible spectrum, such as are emitted by a hot nonincandescent body. They are invisible and nonactinic and are detected by their thermal effect.

Their wave lengths are longer than those of visible light and shorter than those of radio waves.] (9) Ultraviolet Therapy, [Outside the visible spectrum at its violet end; said of rays more refrangible than the extreme violet rays and opposed to infrared.] (10) Ear Irrigations, (11) X-Rays and Fluoroscopy, (12) Endo or Electrocardiogram, [A tracing made by means of the electric needle of an electrocardiograph which shows the contractions of the heart muscle.] (13) Special Interpretations, (14) Laboratory Examinations, (15) Physical Examinations, (16) Basal Metabolism, [The changes going on continually in living cells, by which energy is provided for vital processes and activities in the body, and new material is produced to repair the waste.] (17) Hydro-Therapy [Mineral baths] (18) Blood Count—Urine.''

Moreover, appellants sent out literature to other chiropractors offering to do laboratory work and, among other things, they stated: ''You no longer have to send your patient or children to other doctors to be treated for stomach worms or pin-worms: Read the enclosed bulletin on the one week treatment and Medication, you may legally give your patient for the above infestations.''

It will be noticed that they advise other chiropractors to give ''medication''. They also furnished forms in connection with taking urine specimens in which they indicate that they could diagnose many diseases, including cancer, by examination of the urine. All this adds up to the fact that appellants did not confine their practice to that of chiropractics, but also engaged in the practice of medicine.

Ark. Stats. 72-407 gives the Chiropractic Board authority to revoke appellants' license ''for prescribing any form of medical treatment without having first complied with the law governing the practice of medicine or any method which is not chiropractic''. There is no showing that appellants have complied with the law governing the practice of medicine, and not only is there substantial evidence, but by a great weight of the evidence appellants prescribed treatments and methods of treatment which are not chiropractic.

The Chiropractic Board's authority to revoke a license is not an arbitrary one; such authority must be exercised in a proper manner. Ark. Stats. 72-407 gives the Board authority to revoke a license on certain specified grounds one of which is "prescribing any form of medical treatment". Here, when any and everything that may have been said in appellants absence is wholly disregarded, there remains overwhelming evidence that appellants engaged in the practice of medicine, and it is an aggravated case. The evidence shows that over a considerable period of time members of the Chiropractic Board had attempted, without success, to get appellants to confine their practice to chiropractics. In this case, if the Board had failed to revoke the license on evidence which is properly in the record, there would have been an abuse of authority.

The judgment is affirmed.