RICHARD W. RICKETT, JR. v. HARRY HAYES

5-5676                                        473 S.W. 2d 446

Opinion delivered November 15, 1971
[Rehearing denied December 13, 1971.]

*Gentry & Huckabay,* for appellant.

*Smith, Williams, Friday, Eldredge & Clark,* for appellee.

JOHN A. FOGLEMAN, Justice. The critical point for review in this malpractice action is whether the circuit court abused its discretion in limiting the pretrial examination of an expert expected to be called by the appellee-defendant. The appellant-plaintiff filed his complaint alleging a cause of action for malpractice of Dr. Harry Hayes, a plastic surgeon in Little Rock, in the diagnosis and treatment of a fracture of appellant's lower jaw, sustained by him on July 1, 1966. Medical experts referred to appellant Rickett's injury as a bilateral compound displaced fracture of the mandible which was concededly later complicated by infection. Critical issues devolved around questions whether appellee had negligently failed to remove teeth in the fracture line, whether the surgery, reduction, fixation and treatment of the injured parts were properly performed and whether the services of an oral surgeon to whom appellant was ultimately referred should have been sought earlier.

Appellee directed pretrial interrogatories to appellant seeking to ascertain the identity of persons appellant expected to call as witnesses or who possessed information regarding matters alleged in the complaint and particularly inquired as to physicians or surgeons on whose testimony appellant would rely. Appellant included in the list of those who possessed information

Dr. Wade Smith of Little Rock, to whom he was referred by appellee, Dr. Leigh K. Haynes, a plastic surgeon of Memphis, Tennessee, who treated appellant after the referral to Dr. Smith, Dr. Howard Misner and Dr. Joe Hall Morris, treating oral surgeons of Memphis, and Dr. Robert V. Walker, an oral surgeon of Dallas, along with Little Rock orthopedic surgeons and radiologists. Of these, Smith, Morris and Walker testified at the trial.

In answering pretrial interrogatories, appellee stated his reasons for failure to remove some of Rickett's teeth before undertaking to reduce and fix the fractured jaw. He said that the determination whether such teeth should be removed or retained was a matter of professional medical judgment of the plastic surgeon, governed by his judgment of the circumstances involved, and that he did not remove the teeth in Rickett's case because, in his judgment, they did not interfere with reduction of the fracture. He testified that, in his judgment, teeth should be removed where they were so loose or weakened that their instability might cause future complications. He also answered that, based upon medical judgment, the development of osteomyelitis during the period of some seven weeks between the reduction and fixation and the removal of the appliances placed in appellant's mouth would dictate either immediate surgery or an additional waiting period to allow nature to effect a healing of such a fracture. He chose the latter course of action which he called procrastination. Dr. Hayes admitted that oral surgeons treat a number of injuries about the mouth, teeth and facial bones.

Appellant caused a subpoena to be issued and served on Dr. James G. Stuckey, the only plastic surgeon other than appellee, practicing in the locality. Appellee filed a motion to quash this subpoena. The circuit judge entered a pretrial order denying the motion to quash but limiting the discovery deposition to inquiries about facts, and not about the doctor's opinion regarding appellee's alleged failure to meet the standard of his locality or a similar locality. Appellee also filed a motion questioning the admissibility of testimony of oral sur-

geons as to the standard of care of a plastic surgeon in Little Rock or a similar locality and appellee's failure to meet that standard. This motion was denied the day before the trial commenced.

Appellant's attorneys took the deposition of Dr. Stuckey under the limitations imposed by the court, but it is not in the record. Just before the trial began, one of appellant's attorneys stated an objection to the court's limitation on the Stuckey deposition, asserting inability to cross-examine this doctor when he testified and reminding the court that there were only two plastic surgeons in Little Rock during the period involved.

We have never been faced with the particular question involved here. In *Mallett* v. *Brannon,* 246 Ark. 541, 439 S. W. 2d 32, a personal injury action, we held that there was no abuse of discretion by the circuit court in denying a continuance to a defendant to permit the taking of the discovery deposition of a medical expert by whom the plaintiff had been examined on the eve of trial. We based our holding upon the adequacy of expert opinion which had already been obtained by the defendant from other sources together with that which was presented at the trial. Thus, we said, there was no urgent need for plaintiff's taking this discovery deposition. The question presented here appears in an entirely different frame, so the result we reached there is not controlling here. It is significant that we found that the defendant in *Mallett* was not caught empty-handed because he was able to present expert testimony contrary to that given by plaintiff's newly discovered expert. We recognized, however, that authorities support denial of discovery on an opposing party's expert witnesses only in the absence of extreme need by the examining party and his inability to obtain expert opinion *on the same matter* from other sources. These authorities indicate that an exception to the general rule exists under special circumstances deemed to constitute good cause for allowing such a pretrial examination. Appellant argues that the peculiar circumstances, absent in *Mallett,* prevail in his case, so that it comes within the exceptions noted. We agree.

One of the purposes of discovery procedures is to provide a device for ascertaining not only facts, but information as to the existence or whereabouts of facts relative to the basic issues between the parties. *Hickman* v. *Taylor,* 329 U. S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947). It is intended that these procedures make a trial more nearly a fair contest than a game of blindman's buff by requiring disclosure of basic issues and facts to the fullest practicable extent. *United States* v. *Proctor & Gamble,* 356 U. S. 677, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958). The ascertainment of the sources from which evidence that may be used at trial might be obtained, such as the identity and location of persons having knowledge of relevant facts, is as much a purpose of discovery as any other. Ark. Stat. Ann. § 28-348(b) (Repl. 1962); 8 Federal Practice and Procedure, Wright and Miller, 15 § 2001; *Hickman* v. *Taylor,* supra. This permits a litigant to secure the type of information which may lead to the production of other relevant evidence, or which will facilitate his preparation for trial. See *Hickman* v. *Taylor,* supra;  8 Federal Practice and Procedure 18, § 2001; *Tumlison* v. *Harville.* 237 Ark. 113, 372 S. W. 2d 385; *Allen* v. *Arkansas State Highway Commission,* 247 Ark. 857, 448 S. W. 2d 27.

We have recognized the importance of cross-examination of an adverse witness not only to test his credibility but also in an attempt to wring disclosures which might modify or explain his testimony on direct examination or bring it into a perspective which might present a view more favorable to the cross-examiner. *Washington National Ins. Co.* v. *Meeks,* 249 Ark. 73, 458 S. W. 2d 135. Planning effective cross-examination of adversary witnesses is one of a trial lawyer's most important responsibilities in preparation for trial, particularly when the witnesses are experts. See *Allen* v. *Arkansas State Highway Commission,* supra; *United States* v. *23.76 Acres,* 32 F.R.D. 593 (D. C. Md. 1963). Handicaps to attempting full cross-examination of an expert witness without pretrial discovery of his opinion with its supporting data and theoretical basis are discussed by Professor Friedenthal in "Discovery and Use of an Adverse Party's Expert Information," 14 Stanford

Law Review 455, 485 et seq. The desirability of permitting discovery of adverse expert witnesses to enable advance preparation for effective cross-examination is well stated in the Advisory Committee's Notes to Proposed Amendments to Federal Rules of Civil Procedure Relating to Discovery at 48 F. R. D. 487. Depositions taken under the applicable statute may be used for the express purpose of contradicting or impeaching the testimony of the deponent at the trial of the case. Ark. Stat. Ann. § 28-348(d)(1).

The circuit court's limiting order was entered under the authority which is designed to prevent abuse of discovery processes by limiting the subject of inquiry and the scope of examination. Ark. Stat. Ann. § 28-352(b) (Repl. 1962). In all matters pertaining to discovery the trial judge is necessarily vested with a wide latitude of discretion, and appellate courts will review orders in the exercise of this discretion only to determine whether there has been an abuse of discretion which is prejudicial to the party appealing. Under ordinary circumstances, any error in the exercise of this discretion will be harmless because of ultimate mootness or absence of prejudice. 8 Federal Practice and Procedure 29 et seq., § 2006. Yet, when there has been an undue limitation of pretrial discovery to the prejudice of substantial rights of appellant under the circumstances prevailing, a judgment will be reversed if subsequent developments have not rendered the question moot. *Edgar* v. *Finley*, 312 F. 2d 533 (8th Cir. 1963); *Roth* v. *Bird*, 239 F. 2d 257 (5th Cir. 1956); *Goldman* v. *Checker Taxi Co.*, 325 F. 2d 853 (7th Cir. 1963); *Haney* v. *Woodward & Lothrop, Inc.*, 330 F. 2d 940 (4th Cir. 1964). See also, *Goosman* v. *A. Duie Pyle, Inc.*, 336 F. 2d 151 (4th Cir. 1964); *Arkansas State Highway Commission* v. *Stanley*, 234 Ark. 428, 353 S. W. 2d 173, 4 A. L. R. 3d 749.

Decisions upholding limitations on discovery of an expert witness, particularly where there was a foreclosure of inquiry as to the expert's opinions and conclusions, are abundant and might well support an order such as that entered here in the ordinary case. Still, there are recognized exceptions to the otherwise proper limitation

of discovery of the conclusions of an adverse party's expert where the evidence is indispensable to a determination of a material issue and would be otherwise unavailable. *Leininger* v. *Swadner,* 279 Minn. 251, 156 N. W. 2d 254 (1968); *United States* v. *Meyer,* 398 F. 2d 66 (9th Cir. 1968). An entirely different situation obtains, however, when the expert's testimony pertains to the very crux of the issue to be determined on trial. *United States* v. *Meyer,* supra; *United States* v. *364.82 Acres of Land,* 38 F. R. D. 411 (D. C. Cal. 1965).

For example, in an eminent domain proceeding, the critical issue is usually the amount of just compensation, and evidence on that issue generally consists of the opinions of opposing experts and the factual and theoretical bases upon which they rest. In *United States* v. *Meyer,* supra, it was held that a landowner was entitled to a disclosure of the condemnor's appraisers' opinions and their factual and theoretical foundations to enable him to fairly evaluate the respective claims for settlement purposes, determine the real area of dispute, narrow the actual issues, avoid surprise and prepare adequately for cross-examination and rebuttal. In so holding, the court there recognized that the weight to which an appraiser's opinion testimony is entitled rests upon the validity of the appraiser's premises, procedures, and theories, the soundness of his factual determinations, the methods he has followed and the formulae he has applied. The court in *Meyer* felt that full pretrial disclosure of the opinions of the experts was essential to the accomplishment of the basic purposes of the discovery rules, and that the opinions of these appraisers and their basis were information that could not be obtained from any other source. To the same effect, see *Franks* v. *National Dairy Products Corporation,* 41 F. R. D. 234 (D. C. Texas 1966), aff'd 414 F. 2d 682 (5th Cir. 1969); *United States* v. *23.76 Acres,* 32 F. R. D. 593 (D. C. Md. 1963). The propriety of pretrial examination of an adverse expert in such cases for the purpose of trial cross-examination is consistent with the rationale of *Hickman* v. *Taylor,* 329 U. S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) and the ideal of liberal construction there expressed.[1] A similar

---

[1] *United States* v. *364.82 Acres of Land,* 38 F. R. D. 411 (1965).

result has been reached in permitting discovery of certain reports of an adverse party's expert in a patent infringement case as part of the facts involved. *E. I. DuPont de Nemours Co. v. Phillips Petroleum Co.*, 24 F. R. D. 416 (D. C. Del. 1959).

There is perhaps no case in which the result of the trial on the ultimate issue depends more upon the testimony of expert witnesses than a malpractice case. When the duty of the physician or surgeon in the application of skill and learning ordinarily used in the same medical field in the locality in which he practices is not within the realm of common knowledge, and there is any dispute as to propriety of the method utilized, the critical issue as to liability depends entirely on expert testimony. *Lanier v. Trammell,* 207 Ark. 372, 180 S. W. 2d 818; *Gray v. McDermott,* 188 Ark. 1, 64 S. W. 2d 94.

At the time the limiting order was entered, appellant could not know with any degree of certainty whether the professional standards in Little Rock were the same as elsewhere or what localities could be considered similar, insofar as these standards were concerned. The testimony in the case clearly demonstrates that appellee's duty in the premises was not a matter of common knowledge. Even though the court ruled on the day before the trial that appellant might present testimony of oral surgeons on this basic issue because their field overlapped with that of plastic surgery in the treatment of the particular injury involved, appellant had no means of anticipating this ruling, and appellee's objection to the competency of these witnesses had been made known and discussed with the court at several prior pretrial hearings.[2] It is also significant that appellee was at this late date still objecting to testimony by experts from Memphis and Dallas as incompetent because of the locality

[2]Apparently appellee relied upon the rule that a defending physician's actions are to be tested by the general doctrine of his own school. But we have said that the principles of that school may be shown by an expert who practices the principles of a different school. See *Bockman v. Butler,* 226 Ark. 159, 288 S. W. 2d 597. The difference between the basic approaches of oral surgeons and of plastic surgeons to the proper procedure in appellant's treatment seems to have been recognized throughout the testimony.

rule, even though testimony at the trial left little room for doubt that professional standards in those places were the same as in Little Rock. Had both objections been sustained, none of the experts who testified on behalf of appellant would have been permitted to do so.

Many cases relating to the expert witness as a subject of discovery draw a distinction between discovery of facts upon which the expert bases his opinion and discovery of his opinions and the conclusions he draws from these facts. See *Franks* v. *National Dairy Products Corporation,* 41 F. R. D. 234 (D. C. Tex. 1966). We need not engage in a philosophical discussion whether the professional standard for plastic surgeons in Little Rock was a fact,[3] rather than a matter of opinion, and discoverable in spite of the court's limitation, because we cannot see how testimony as to standards and as to appellee's compliance therewith could possibly be separated so the examiner could ask a pertinent question which did not call for the expression of an opinion or conclusion, or how the witness could answer such a question without expressing his opinion or his conclusion based upon the facts in the case.

We have recognized the existence of the practical problem confronting a plaintiff seeking expert testimony in a medical malpractice case. See *Graham* v. *Sisco,* 248 Ark. 6, 449 S. W. 2d 949. In order that appellant might prepare for the trial, it became particularly important that he be fully informed as to the testimony to be given by appellee's expert witness, the only other plastic surgeon in the locality. Assuming that the deposition taken under the court's limitation (but not in the record before us) did enable appellant to discover, as a matter of fact, what localities were similar to Little Rock in the matter of professional standards and adequate information as to sources from which he might obtain evidence on the critical issue, and, further assuming that appellant had other sources of adequate information as to methods, standards, and procedures, still he could not anticipate

---

[3]Expert opinion presented as evidence going to a critical issue has been treated in substance as a matter of fact. *United States* v. *38 Cases,* 35 F. R. D. 357 (D. C. Pa. 1964).

Dr. Stuckey's opinion whether appellee had met the appropriate standard and his factual and theoretical bases for that opinion. For that matter, he could only speculate what this surgeon might consider to be the appropriate standard of skill and learning. Thus, in a situation where it might be calculated that the particular expert's testimony would carry considerable weight, appellant's attorneys may well have been severely handicapped, as he claimed on the threshold of the trial, in conducting a cross-examination of this witness, which might be the only effective means of minimizing the weight to be given to his testimony by the jury. Because of this, the trial court's order was unduly restrictive. This conclusion is in harmony with our longstanding commitment to the liberal interpretation of the discovery act necessary to accomplish its salutary purposes. See *Bower* v. *Murphy*, 247 Ark. 238, 444 S. W. 2d 883; *Arkansas State Highway Commission* v. *Stanley*, 234 Ark. 428, 353 S. W. 2d 173, 4 A. L. R. 3d 749.

Even though appellant's attorneys conducted an apparently extensive cross-examination of Dr. Stuckey, we cannot say that the error in unduly restricting the scope of discovery inquiry was harmless in view of what we have said. We could only speculate whether the cross-examination would have been more effective if appellant had not been limited in his discovery. We presume that error is prejudicial unless we can say with assurance that the record discloses that it is harmless. *Arkansas State Highway Commission* v. *Parks*, 240 Ark. 719, 401 S. W. 2d 732, 26 A. L. R. 3d 775; *Allen* v. *Arkansas State Highway Commission*, 247 Ark. 857, 448 S. W. 2d 27. This we cannot do.

Although the judgment must be reversed for the error indicated, other points argued by appellant may well arise on retrial. He contends that there was reversible error in his being cross-examined about prior convictions for drunkenness and about an arrest for being drunk. We find no merit in either argument. We do not agree that cross-examination as to past convictions is limited in Arkansas to convictions of crimes which are infamous and dishonest in nature. We have specifically

held that questions about previous convictions of drunkenness were permissible to test credibility. *Atha* v. *State,* 217 Ark. 599, 232 S. W. 2d 452. Such cross-examination is not precluded by either Ark. Stat. Ann. § 28-707 (Repl. 1962) or Ark. Stat. Ann. § 75-1012 (Supp. 1969) as contended by appellant. Ark. Stat. Ann. § 28-605 (Repl. 1962) makes evidence of former conviction of a witness of any crime admissible as going to his credibility. Any possibility of conflict between this section and Ark. Stat. Ann. § 28-707 is immaterial here, because the adoption of the former section followed that of the latter by more than 40 years. Ark. Stat. Ann. § 75-1012 prevents the use of evidence of violation of the uniform act regulating traffic on the highways [Ark. Stat. Ann. § 75-1001 et seq. (Repl. 1957)] to attack the credibility of a witness. Ark. Stat. Ann. § 48-943 (Repl. 1964) making public drunkenness a misdemeanor is not a part of the act covered by Ark. Stat. Ann. § 75-1012.

There was no error in the court's failure to prevent appellee's attorney from asking appellant whether he had been arrested for drunkenness three days before appellant testified on appellee's second discovery deposition. In the first place, no objection was made to the question, and appellant's general and continuing objection to his interrogation on past convictions did not reach this inquiry. In the second place, there is an exception to the general rule that a witness may not be impeached by examination as to prior arrests, when the inquiry is made of the witness himself to show that he has testified falsely in answering a question about previous arrests. *Montaque* v. *State,* 219 Ark. 385, 242 S. W. 2d 697. See also III A Wigmore on Evidence 1018, § 1023. In this instance, appellee asked Rickett if he had not responded in the negative, on the occasion of the second deposition, to an inquiry whether he had been arrested since the taking of the first deposition. The question about the arrest actually came within the exception to the general rule.

The judgment is reversed and the cause remanded for a new trial. Appellee's prayer that we tax the cost of his additional abstract to appellant is denied.