BETTY SUE GRAY *v.* STATE OF ARKANSAS

5760                                485 S.W. 2d 537

Opinion delivered October 16, 1972

*Carpenter, Finch & McArthur,* for appellant.

*Ray Thornton,* Atty. Gen., by: *James A. Neal,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Betty Sue Gray was found guilty of second degree murder of her husband Bobby Gray, who died as the result of a single abdominal gunshot wound inflicted by her while both were at the Park Lounge in Little Rock on the evening of August 7,

1971. She seeks reversal of her conviction on four grounds. They are:

> I. The trial court erred in allowing alleged oral admissions by appellant to be placed before the jury without a proper prior hearing as to their voluntariness and admissibility.

> II. The trial court erred in failing to direct a verdict of not guilty to first and second degree and the evidence is insufficient to sustain the jury's verdict of second degree murder.

> III. The trial court erred in allowing State to cross-examine appellant as to convictions of misdemeanors.

> IV. The trial court erred in allowing the Prosecuting Attorney to misstate the law of murder in the second degree and manslaughter.

At the outset, we consider and dispose of Point II, because it involves consideration of evidence in the case. We have carefully reviewed this evidence and find it, when viewed in the light most favorable to the state, to afford ample support to the jury's verdict of second degree murder.

Appellant testified that she had lived with Bobby Joe Gray for about eight years, during which she had supported him and herself by prostitution, but that they had been married only about one month. She and Bobby Joe had differences about his relationship with one Ruby Graves, and she said that on the afternoon preceding his shooting he had called and told her that he was with Ruby Graves. She stated that after she had seen her car parked at an apartment house, she had gone in and had been told by a friend that her husband and Ruby Graves were in the friend's apartment, and, following her unsuccessful attempts to gain admission, she left, went home and decided to go visit a friend. She stated that when she left home she took the pistol (described as a four-barrel derringer) with which the fatal shot was fired. After she visited the friend for about an hour and one-half, she went to the Park Lounge, arriving at about

7:15 p.m. Both Bobby Joe Gray and Ruby Graves were at the lounge when she entered.

There is a conflict in the testimony as to what took place after her arrival. Pat R. Wilson, a part owner of the lounge, testified that Gray was sitting at the back of the tavern with two men, and Ruby Graves was sitting alone on the opposite side of the room. He stated that after appellant had walked past the table where her husband was sitting she sat down on a stool at the bar, ordered a beer, and then turned to Gray and asked him why he wasn't sitting with his whore. Then, he said, Gray walked to the bar, and the two started cursing one another. The bartender said that appellant then pulled a pistol from her brassiere, but returned it when he directed her to do so. Gray started to walk away, but, according to Wilson and other witnesses, he turned, grabbed her blouse, tore it open and exclaimed "I know you have a gun, Betty. I'm not afraid of it. Go ahead and shoot me." or words of similar import. According to four witnesses who were at, or near, the bar, she then shot Gray. Wilson said that she was only an arm's length from her husband when she fired the shot after placing the gun very close to him. The witnesses for the state said that Gray fell to the floor immediately saying "Betty, you shot me." or "She shot me." Wilson testified that appellant stood at her husband's head, and stated "I know I shot you." nudging his head with her foot. Nellie Johnson, who had been seated at the bar, said that appellant kicked Gray lightly and said "Is it worth it? I told you I'd get you."

The bartender, who left to call the police, testified that upon his return appellant told him to take Ruby Graves out or she would shoot her. An examining pathologist at the University of Arkansas Medical Center described powder markings at the wound entrance. He described the course of the bullet as running downward through the body at an angle of 45 degrees from its point of entry on the lower part of the right side of the chest. Even though there was evidence upon which the jury might have found appellant guilty of voluntary manslaughter, the evidence was not only sufficient to support a conviction of second degree murder, but it would have supported a conviction of first degree murder.

Appellant's third point may be quickly disposed of. In Arkansas, a witness may be cross-examined as to convictions of misdemeanors. In *Hays* v. *State*, 219 Ark. 301, 241 S.W. 2d 266, we held that a defendant in a criminal case may be cross-examined about convictions of various misdemeanors, including gambling, immorality, drinking in a public place and possessing untaxed liquor, citing a case in which inquiry as to conviction for disturbing the peace had been held proper and another where the conviction was for drunken driving. See also, *Rickett* v. *Hayes*, 251 Ark. 395, 473 S.W. 2d 446; *Atha* v. *State*, 217 Ark. 599, 232 S.W. 2d 452.[1]

Appellant's first point is based upon procedures which were not prejudicial, even if erroneous. She moved to suppress testimony of police officers as to statements made by her to them. A pretrial hearing was held on the day preceding the trial. Appellant objected to the testimony of Officer Morrow, one of the officers who went to the scene, arguing that he was unable to state that appellant's statements were spontaneous or that they were made before she was in custody, because he was not the first officer at the scene. The officers who preceded him were not then available to testify. Appellant's attorney stated at this hearing that it would be admitted that appellant shot the deceased. The court then held that certain statements made by appellant at the police station were voluntary and admissible. These incriminating remarks were admitted into evidence without further objection. The court also held that statements made to Officer Morrow were voluntary, conditioned, in part, upon the testimony to be given on the next day by officers not available at the pretrial hearing relating to the time the defendant was taken into custody and the nature of the statements, i.e., whether voluntary or responsive to interrogation by the officer. Officer Morrow did not testify at the trial. No further hearing in the absence of the jury was had as to whether appellant's statements were voluntary.

---

[1]Two of the alleged convictions about which inquiry was made were described as vagrancy. The circuit judge directed that no further inquiry be made along this line, after an objection was made because appellant had testified on direct examination that she was a professional prostitute.

When Officer Bounds was unable to identify appellant as the woman making certain statements in his presence, the circuit judge instructed the jury to disregard the testimony. No further objection was made to this procedure, and the judge was not requested to give further admonition or to declare a mistrial. Officer Gocke then testified about statements made by appellant in his presence and identified her as the person making the statements. The only objection made to the testimony of this officer about appellant's statements was that it was hearsay. Gocke testified that appellant approached the officers as soon as they arrived, started cursing her husband, and stated, without any questions having been asked, that she shot the "g. d. s.o.b." because he grabbed her in spite of her telling him not to ever touch her. He also testified that appellant's arrest followed the making of these remarks. Appellant's attorney cross-examined this witness about his ability to identify appellant and to remember exact words of appellant's statement, the condition of appellant's clothing and the time. No objection to the procedure followed was ever made by her. Furthermore, appellant testified in her own behalf, without any direct contradiction of Gocke's testimony and without any suggestion that her statements to the officers were involuntary, or the result of interrogation or that she was in custody at the time they were made.

While Ark. Stat. Ann. § 43-2105 (Supp. 1971) requires an in camera hearing on the admissibility of a confession, it also provides that the issue of fact involved in determining admissibility shall be decided by the court (on evidence heard out of the presence of the jury) when the issue is raised by the defendant. The significance of the lack of objection to a consideration of the issue of voluntariness was recognized by the Supreme Court of the United States in *Pinto* v. *Pierce*, 389 U.S. 31, 19 L. Ed. 2d 31, 88 S. Ct. 192 (1967). It is not improbable that appellant expected to gain corroboration of her theory of self-defense, or of her testimony from which the jury might have found that her actions resulted from sudden, uncontrollable passion, through statements made by her immediately after the shooting. Appellant cannot say that she suffered any unfair consequences under the circumstances. We cannot say that reversible

error was committed. See *Pinto* v. *Pearce,* supra; Annot., 19 L. Ed. 2d 1313 (1968).

In support of Point IV, appellant contends that, in the closing argument, the deputy prosecuting attorney's statements deluded the jury into a belief that it could not find that the degree of homicide was voluntary manslaughter unless the killing was unintentional. She cites the action of the jury in requesting, after some period of deliberation, a simplified explanation of the distinction between the various degrees. We find no merit in this contention. The record discloses that the deputy prosecuting attorney had distinguished second degree murder from first degree and then said that voluntary manslaughter was not an intentional crime, after he had stated that this degree did not require any of the elements he had previously mentioned. When appellant's attorney interposed an objection, the judge stated that second degree murder includes intent and all elements of first degree murder except premeditation and deliberation. The court had given correct instructions distinguishing the degrees of homicide. When the jury, after deliberating for a time, requested a written, simplified explanation and distinction between murder in the first degree, murder in the second degree and manslaughter, the trial judge furnished the jury with all his instructions, in writing, including that on self-defense. This procedure was followed with the express approval of the attorneys for both sides. Appellant never requested an admonitory instruction or the declaration of a mistrial by the court after the statement complained of was made. Any error that there may have been in this isolated statement made during the course of the argument could hardly have misled the jury, when all the circumstances are taken into consideration. Certainly, it cannot be said, if there was error, that it was reversible error.

The judgment is affirmed.