## C. W. CURBO et al v. Billy N. HARLAN et al

5-6114                                    490 S.W. 2d 467

### Opinion delivered January 22, 1973
[As Amended on Denial of Rehearing March 5, 1973.]

*Hodges, Hodges & Hodges,* for appellants

*Terral, Rawlings, Matthews & Purtle* and *John D. Eldridge,* for appellees.

LYLE BROWN, Justice. The real parties in interest in this appeal are Jan Curbo, defendant-appellant, and Lillian Dozier, a plaintiff-appellee, she having recovered judgment for $40,000 for the death of her husband, William Dozier. Appellant sets forth twenty-eight alleged errors in the trial. Since the case is being reversed we shall touch on only those matters which might arise in another trial.

At the time of the accident, which occurred on Highway 33 a few miles south of Augusta, William Dozier was riding in the rear seat of an automobile owned and being driven by Billy Harlan. Dozier's widow contended that the defendant-appellant Jan Curbo negligently backed out of a driveway in Harlan's lane of traffic, forcing the Harlan car into the Curbo car and causing the death of her husband. The jury found Curbo 75% negligent and Billy Harlan 25% negligent.

Before discussing the issues it should be related that William Dozier, Billy Harlan, and Billy's brother, had been together all the afternoon of the accident which occurred at approximately 7:30 p.m. Between the three of them they had admittedly consumed two, six-packs of beer. There was also evidence that a portion of a "fifth" of whiskey was in the car but there is no direct proof that they consumed any of it.

The first point raised by appellant Curbo is that the court erred in not submitting to the jury the contention of appellant that William Dozier was negligent. We think the point is well taken. As a passenger in the

automobile Dozier was required to exercise ordinary care for his own safety. AMI (Civil) 910. It is true Dozier's assumption of risk was submitted to the jury and the finding was that he did not assume it. At first blush it might appear that assumption of risk covered any alleged negligence by Dozier. It is true the two doctrines—assumption of risk and contributory negligence—overlap "and are intersecting circles, with a considerable area in common, where neither excludes the possibility of the other. ...The significant difference, when there is one, is likely to be one between risks which were in fact known to the plaintiff, and risks 'which he merely might have discovered by the exercise of ordinary care". W. Prosser, Law of Torts (4th ed. 1971). See *Hudgins* v. *Maze*, 246 Ark. 21, 437 S.W. 2d 467 (1969). Furthermore, it could hardly be said that Dozier assumed the risk of the driver of the other car, Curbo, in backing out on the highway. As to the risks which Dozier might have discovered had he been reasonably alert, we point to that evidence which charged that Billy Harlan was traveling at an excessive rate of speed; that the Curbo car backed out of the driveway when the Harlan car was some 900 feet back down the highway; and, of course it was known to Dozier that Harlan had consumed alcoholic beverages, at least some four cans of beer.

Appellee strongly urges that we have a case that is controlling. *Reed* v. *McGibboney*, 243 Ark. 789, 422 S.W. 2d 115 (1967). The evidence we have just recited shows the facts in *Reed* to be considerably different than in the case at bar.

The second point for reversal is that the court erred in holding the evidence did not warrant the submission of the theory of joint enterprise between Dozier and Harlan. Suffice it is to say that the evidence does not establish the two fundamental and primary requisites of joint enterprise, community of interest and an equal right to direct the conduct of each other. *Stockton* v. *Baker*, 213 Ark. 918, 213, S.W. 2d 896 (1948).

The next point is that the court erred in not granting a directed verdict on the issue of mental anguish on behalf of the widow. It has been said that there will never be devised a definite rule by which to determine the money required to compensate for mental anguish.

It rests largely within the province of the jury. *Pitts* v. *Greene*, 238 Ark. 438, 382 S.W. 2d 904 (1964). In the case before us the couple had been married 37 years and raised six children to adulthood. She stayed with him every other night and day while he was in the hospital. She saw him suffer for four months before his death. There are other factors we could recite but suffice it to say that we are unable to conclude the court erred in this respect.

The next point concerns the voir dire examination of the jury panel. The attorney for Mrs. Dozier questioned the jurors about their possible prejudice against the deceased for the consumption of intoxicants. Thereafter, appellant inquired whether proof offered by appellant as to the intoxication of the deceased when he was dead and not present at the trial would be offensive to the jury, thereby prejudicing Curbo. The court refused to let the jury answer. The court has wide latitude in this matter and we are unable to say it was abused. We also point out that the judge questioned the jury on the subject and we think the question and answers were sufficient to apprise the attorneys of any prejudice. However, in retrospect, it would seem to be the better practice—since appellee's counsel was permitted to inject the subject—to permit counsel for appellant to proceed to propound the question posed.

The appellant next contends that "the trial court erred in its rulings on thirteen separate and distinct instructions." It would unduly extend this opinion to treat the maze of technicalities raised and would be of no useful purpose to the bench and bar generally. The court gave some 28 instructions, practically all being taken from AMI (Civil). Our review of those instructions convinces us that each and every issue was fully and fairly covered, except the failure to instruct on the alleged negligence of the deceased Dozier (which we have already discussed) and on the defense of intervening cause. As to the latter defense, there was expert testimony that Dozier died of a myocardial infarction wholly disconnected with the accident. Therefore the question should have been submitted to the jury.

We next consider the point that the court erred in requiring the attorney for Jan Curbo to produce certain statements for the attorney for appellee Dozier. The

statements were taken by an investigator for the liability carrier and turned over to counsel for appellant. The court held that the statements were not the work product of the attorney. (The investigator is a licensed attorney but was not acting in his capacity as such.) In matters of discovery the trial judge has a wide latitude of discretion and we are unable to say that it was abused. *Rickett* v. *Hayes*, 251 Ark. 395, 473 S.W. 2d 446 (Nov. 15, 1971).

The next contention is that the trial court violated Rule 7 (b), Uniform Rules for Circuit and Chancery Courts, Ark. Stat. Ann., Vol. 3A, P. 105, 1971 Supp, which provides that objection should be sustained to the cross-examination of a witness by more than one attorney, "unless there is special reason for ruling otherwise". We point out that appellant's objection to the re-cross-examination of Dr. Carlton by a second attorney in the case should have been sustained since no special reason therefor was shown.

Appellant Curbo argues that he was entitled to a directed verdict because (1) there was no substantial evidence of negligence on the part of Curbo. There was evidence going to the issues of speed, lookout and control and that evidence was amply sufficient to take the case to the jury on that point. And (2) Curbo says there was not sufficient evidence of negligence as it would relate to causation between the negligence of Curbo and the death of William Dozier. Death did not occur until some three months after the accident. It was Curbo's theory that death resulted from a heart attack brought on by natural causes. The evidence showed that prior to the accident Dozier had been a healthy and able bodied man all his life. Dr. Hendrickxson testified that "it was a very strong likely occurrence when Mr. Dozier struck the back seat he damaged either the origin of the superior mesentery or the superior mesentery artery itself, resulting in the eventual occlusion of the artery by a thrombosis, blood clot" and resulted in his death. "In retrospect I can relate this man's death to nothing else". There was medical evidence to the contrary but Dr. Hendrickxson's testimony clearly made a case for the jury on the question of causation.

The final set of points, grouped under one heading, relate to the examination and cross-examination of a state

trooper relative to an intoximeter test given to Billy Harlan. Some of the testimony was objected to and some was not. The policeman testified that the instrument did not register a sufficient amount of alcohol to justify the arrest of Harlan; hence we are unable to perceive any prejudice. As to the policeman testifying that Billy had consumed some alcohol, that fact was admitted by Billy in his testimony.

Billy Harlan obtained judgment against Jan Curbo for $375. In that connection it is argued on appeal that the finding by the jury that Harlan was guilty of only 25% negligence is against the preponderance of the evidence. We disagree. We affirm that judgment against Curbo.

Reversed and remanded.