Melvin G. MARROW *v.* STATE FARM
INSURANCE COMPANY

78-68                                    570 S.W. 2d 607

Opinion delivered September 18, 1978
(Division II)
[Rehearing denied October 30, 1978.]

228

*J. B. Cobb,* Memphis, Tenn., and *William Wilson,* for appellant.

*Laser, Sharp, Haley, Young & Huckabay, P.A.,* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal comes from a summary judgment against appellant Melvin G. Marrow in his suit against appellee State Farm Insurance Company for fraud in obtaining a settlement of appellant's claim against its insured Francisco Baltierrez for personal injuries resulting from a collision between an automobile driven by Baltierrez and another, occupied by Marrow and his family. Marrow contends that the record discloses that genuine issues of material fact existed, that the trial court granted the summary judgment prematurely because appellant's discovery was not complete and that the trial court erred in denying certain portions of his motion for production of documents and his motion for production of documents not previously produced. We disagree with appellant on the first of these contentions. The latter two are so interrelated that they must be considered together. When we do this, we find reversible error.

Marrow sued his attorney Harold Sharpe and appellant jointly. The action against Sharpe should be classified as a malpractice suit. This phase of the suit is not involved on this appeal. Appellant alleged that Sharpe had been employed to represent him and his family in seeking recovery from State Farm Insurance Company for his damages and those of his family and that, during negotiations for settlement of these claims, the adjuster for State Farm advised Sharpe that the Baltierrez liability coverage was limited to $20,000 for any one person injured and $40,000 for all persons injured. According to the allegations of the complaint, Marrow settled his claim for personal injuries for $20,000, believing that this was his maximum possible recovery because of the assertions Sharpe attributed to State Farm. Marrow further alleged that he later discovered that the policy limits were far in excess of those he had been led to believe were applicable. Further allegations were assertions that misrepresentations of the policy limits were fraudulently made by State Farm through its adjuster. Marrow had sought recovery of $200,000 based upon medical expenses in excess of $13,000 and severe and serious permanent injuries to his person, including a permanent loss of earning capacity.

Marrow has, at all times, admitted that no representative of State Farm had ever made any representation to him about the limits of the Baltierrez coverage. His action depends upon a showing that State Farm misrepresented the amount of the policy limits to Sharpe. It appears that all negotiations with the insurance company in making a settlement of Marrow's claim for personal injuries for $20,000 were conducted by Sharpe, who testified that his files in the case had been shredded. In a discovery deposition, Sharpe has denied that the insurance company or its agents ever made any representation to him about the amount of the policy limits. Sharpe stated that he had reached a conclusion as to the policy limits after talking with a representative of State Farm, and all his conversations were with Joe Fagan and James (Dutch) Meredith.

Marrow states unequivocally that he gave Sharpe authority to settle his claim for the amount of the Baltierrez policy limits, but for no less, whatever they were. He states, just as positively, that he was informed by Sharpe that the settlement was for the amount of the policy limits and that Sharpe had previously assured him that he could ascertain the amount of these limits from one Joe Fagan, a State Farm adjuster who lived in West Memphis. Marrow says that he did not realize that this was not true until there had been a settlement of a claim by his son-in-law for the death of Marrow's daughter as a result of the collision. By adding the amount paid in this settlement to the recovery on behalf of himself, his wife and his son, he discovered that the total paid all parties by State Farm was $41,000. Marrow testified that when he confronted Sharpe with this fact, Sharpe stated that the State Farm representatives had misled him and had lied about the amount of the policy limits. He then endeavored to investigate, or to cause an investigation to be made, to determine the true facts. It is admitted that the policy limits for personal injuries to one person were $50,000. This action was filed after Marrow became convinced that the policy limits were in excess of those he had been led to believe were applicable.

An earlier motion for summary judgment was held premature. Before that motion was heard, Marrow's attorney had filed a request for production of documents. This first

request was denied by the court as being too generalized because it might force the production of work product and other confidential matters. That motion had sought production of the entire file of State Farm concerning Marrow's claim. In its order, the court indicated that a particularized request should be granted. Appellant then filed a motion for production of the following documents:

1. All correspondence, memorandum, communications, or writings by State Farm Insurance Company as to the evaluation of or record of reserve for contingent liability growing out of the accident of their insured, Francisco Baltierrez, on July 4, 1971.

2. All correspondence between the defendant, Harold Sharpe, Attorney, and State Farm Insurance Company and the replies of State Farm Insurance Company as to:
    (a) Evaluation of different claims against Francisco Baltierrez as a result of the accident of July 4, 1971.
    (b) Offers of Settlement of the above
    (c) Counter-Offers of Settlement.
    (d) Any other written memorandum pertaining to negotiations and offers of settlement.

3. All documents, not privileged, pertaining to the value of the claim of Melvin Marrow against Francisco Baltierrez and his insurance company, the defendant, State Farm Insurance Company; including documentation or information which will lead to correspondence not privileged bearing on the same issues.

4. All inter-office memorandum pertaining to the evaluation of the claim of Melvin Marrow or the combined claims of Melvin Marrow and the members of his family against State Farm Insurance Company or their named insured, Francisco Baltierrez.

5. All correspondence from Harold Sharpe and the replies thereto after Melvin Marrow lodged a complaint with the Commissioner of Insurance and Banking or the Bar Association of Arkansas against Harold Sharpe.

6. All inter-office memorandum or notes or letters which might have caused Harold Sharpe to believe that Francisco Baltierrez had policy limits with State Farm Insurance Company in the amount of $20,000.00/$40,000.00.

7. All inter-office memorandum pertaining to the offers of settlement, counter-offers of settlement, or any other written memorandum pertaining to negotiations and offers of settlement.

8. All inter-office memorandum requesting, discussing, directing, or granting authorization to make offers of settlement.

9. All memorandum concerning phone conversations between defendant, State Farm Insurance Company, employees or agents and defendant, Harold Sharpe or his agents or employees pertaining to policy limits or offers of settlement.

State Farm objected to items 1, 3, 4, 6, 7 and 8. It also objected to item 2 (d). It agreed to produce other material specified in item 2, and all that requested in items 5 and 9. As to item 6, State Farm agreed to produce all its correspondence with Sharpe and all memoranda made by any adjuster concerning his negotiations with Sharpe. The trial court then ruled that, except for the written correspondence between representatives of State Farm and Sharpe and copies of written memoranda concerning conversations between State Farm and Sharpe made by the representatives of State Farm having the conversations, the requests were for matters that were either privileged, or the need for them had not been satisfactorily shown.

State Farm then filed the motion for summary judgment that resulted in the judgment from which this appeal was taken. Appellant then moved for an order requiring State Farm to produce the following documents:

1. The memorandum of 7/30/71 which was referred to in the memorandum dated 9/15/71 to Res. Supt. James Reese from Joe Fagan, West Memphis CSO, as follows:

"After receiving a copy of your memo of 7/30/71 setting forth the best procedure to follow in this claim, I contacted Danny Doler and discussed the claim with him in the presence of his mother. According to our strategy, I advised Danny and his mother that we were dealing with limited funds, . . . . "

2. Written memorandum made as a result of a phone conversation between James Reese and Joe Fagan on Spetember 15, 1971 which was referred to on Page 3 of the memorandum dated 9/15/71, heretofore described. Also on Page 4 of this same memorandum, reference is made to a meeting between Joe Fagan and Harold Sharpe to discuss the claim of Mr. Marrow and his family. The plaintiff requests any notes or memorandum made by Mr. Fagan in this meeting.

3. The office memorandum dated 11/1/71 to Joe Fagan, West Memphis, Arkansas, CSO from Res. Supt. James C. Reese indicates that the two men discussed the case by phone on October 15, 1971. Plaintiff requests production of any written memorandum of such conversation.

4. Plaintiff requests a copy of Joe Fagan's partial closing report and any memorandums made of a conversation between Joe Fagan and James Reese, made from the office of Attorney, Harold Sharpe conveying Mr. Sharpe's "low dollar figure" for settlement; or any written memorandum made in conjunction with or incident to this conversation.

5. Reference is made in a memorandum dated 12/3/71 from James Reese to Wayne Hill concerning a conversation between Mr. James Reese and Attorney, Sharpe. Plaintiff requests production of any memorandum or notes concerning said conversation.

6. A memorandum dated 12/15/71 from Wayne Hill to James C. Reese, contains references to frequent contacts between Wayne Hill and Attorney Sharpe between the dates of 12/3/71 and 12/15/71. Plaintiff requests the production of any notes or memorandum made by

Wayne Hill in conjunction with these frequent visits during this period.

7. In the letter dated 12/15/71 from Attorney Sharpe to Jim Reese, reference is made to a phone conversation which occurred during the first several days in December. A note is also entered at the end of this letter stating that "Sharpe called 12/20/71." Plaintiff requests production of any notes or memorandum made by Mr. Jim Reese in connection with either of these phone conversations.

8. Reference is made in the letter dated 4/5/72 from Wayne Hill to James Reese to a phone conversation of 4/5/72 between Mr. Hill and Mr. Reese. Plaintiff requests production of any notes or memorandum of this conversation made by Mr. Reese or Mr. Hill.

9. In the memorandum dated 5/2/72 from James Reese to Mr. Jack Christensen, Res. Supt. for the defendant, State Farm, Northern Illinois, there is reference to a memorandum prepared by Mr. Christensen dated 4/28/72. Plaintiff requests production of said document.

10. Plaintiff previously requested and the defendant, State Farm, agreed to produce "all correspondence from Harold Sharpe and those replies thereto after Melvin Marrow lodged a complaint." Defendant produced a letter addressed to Mr. Melvin Marrow from Mr. George M. Polk, showing carbon copies of the letter being addressed to Mr. R. O. Noel and Mr. Troy Phillips, employees of defendant, State Farm in the "Home Office Complaint Department." Plaintiff requests copies of all correspondence to or from Mr. Noel, Mr. Phillips, and Mr. George M. Polk concerning the complaint filed by Mr. Marrow.

This motion was entitled: "Plaintiff's Motion for Production of Documents not Previously Produced."

A hearing was held on these later motions. The court first granted the summary judgment and then denied the last motion of appellant for production of documents, but both

actions were incorporated in the judgment from which this appeal is taken. The reasons for the denial were not stated.

In approaching the questions raised on this appeal as to the denial of appellant's request for documents not previously furnished, we must consider the permissible scope of discovery. We have never sanctioned an outright and unadulterated "fishing expedition" under Ark. Stat. Ann. § 28-356 (Repl. 1962). *Price* v. *Edmonds,* 231 Ark. 332, 330 S.W. 2d 82. The later case of *Arkansas State Highway Com'n.* v. *Stanley,* 234 Ark. 428, 353 S.W. 2d 173, relied upon by appellant, did not overrule *Price* (relied upon by appellee) or abrogate the principle upon which that holding was based. The two decisions are harmonious and easily reconciled. The request in *Price* was that Edmonds, a utility rate payer, be permitted to inspect all the books and records of a utility commission charged with the operation of the electric power distribution system, the waterworks and the sewer system of the City of West Memphis, in connection with his suit to enjoin the commission from entering into any contract with, or making any payment to, any concern in which one or more of the commissioners had an interest. Ark. Stat. Ann. § 28-356 was not mentioned in the opinion but it was the governing statute. In *Stanley,* we were treating the same section of the discovery statute, but the request there was for entry upon the lands of a condemnee by the condemnor for the purpose of making test drillings to determine the extent of mineral deposits thereunder, because the landowner had contended that the lands taken from him contained valuable mineral deposits. Our recognition there that the legislature intended that the section be given a liberal construction under the rule of *Hickman* v. *Taylor,* 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), was in nowise a limitation on the *Price* decision. *Hickman* recognized that the knowledge essential to proper litigation was knowledge of *relevant* facts. In *Stanley,* we stated tha the two controlling factors in granting and refusing an order for discovery were relevancy and good cause, citing Barron & Holtzoff, Federal Practice & Procedure (1961) § 793. See also, Case Note, Trial Practice — Federal Rule 34 — Showing of "Good Cause" for Discovery, 8 Ark. Law Rev. 125. We found that both existed in *Stanley.* Although we have consistently adhered to the rule of liberal construction of this section, we have also adhered strictly to the rule that in order

for a litigant to be entitled to discovery under its provisions, he must show good cause. See *Dritt* v. *Morris*, 235 Ark. 40, 357 S.W. 2d 13; *Tumlinson* v. *Harville*, 237 Ark. 113, 372 S.W. 2d 385; Case Note, Trial Practice, Federal Rule 34 — Showing of "Good Cause" for Discovery, supra. Furthermore, we have not deviated from our position that relevancy is one of the two controlling factors. See *Kuhl* v. *Arkansas State Board of Chiropractic Examiners*, 236 Ark. 58, 364 S.W. 2d 790. Of course, relevancy is not limited to the question whether the documents themselves constitute evidence, if they may reasonably be expected to lead to the discovery of evidence. Ark. Stat. Ann. § 28-348 (b) (Repl. 1962); *Tumlinson* v. *Harville*, supra. See also, Case Note, supra, 8 Ark. Law Rev. 125, 126. It is significant that we have not eliminated the requirement of a showing of good cause from our statute, as has been done in other jurisdictions, so cases from those jurisdictions involving the application of a statute or rule which does not contain this requirement are not to be considered, even though it seems that, even in the absence of this requirement, a showing of necessity is required.

As in all matters pertaining to discovery the trial court has a wide latitude of discretion in determining the existence of the controlling factors in any case, and that discretion will not be controlled by this court in the absence of abuse which is prejudicial to the appealing party. *Tumlinson* v. *Harville*, supra; *Curbo* v. *Harlan*, 253 Ark. 816, 490 S.W. 2d 467; *Dunaway* v. *Troutt*, 232 Ark. 615, 339 S.W. 2d 613; *Rickett* v. *Hayes*, 251 Ark. 395, 473 S.W. 2d 446. Yet we have not hesitated to find an abuse of discretion where there has been an undue limitation of substantial rights of the appellant under the circumstances prevailing, if subsequent developments have not mooted the question. *Rickett* v. *Hayes*, supra.

In this case, we find an abuse of discretion in the denial of appellant's last motion for production of documents. In so doing, we consider the fact that appellant, if he has any claim against State Farm, is placed in the position of having to prove it by the testimony of officers and agents of State Farm and by documents, papers and letters, written by them and kept by State Farm. In such a case, the scope of discovery permitted should be broader than otherwise and appellant here should be permitted to inspect any writing in the files of

the insurance company which might lead to admissible evidence. See *Connecticut Mutual Life Ins. Co.* v. *Shields*, 17 FRD 273 (S.D., N.Y., 1955); *Dow Chemical Co.* v. *Monsanto Co.*, 256 F.S. 315 (S.D., Ohio, 1966).

It is readily apparent to us that, under the circumstances, appellant's discovery has been unduly limited. The goal of all discovery is to permit a litigant to obtain whatever information he may need to prepare adequately for issues that may develop without imposing an onerous burden on his adversary. *United States* v. *Ling-Temco-Vought, Inc.*, 49 FRD 150 (W.D., Pa., 1970). A motion for production of documents must be considered in the light of the particular circumstances which give rise to it and the need of the movant for the information requested. *Straughan* v. *Barge MVL No. 802*, 291 F.S. 282 (S.D., Tex., 1968). That the information sought is not otherwise available to the party making the request, and that evidence pertaining to the issue, if there is any, would likely be in the files of State Farm, are very pertinent circumstances. *Chitty* v. *State Farm Mutual Automobile Ins. Co.*, 36 FRD 37 (E.D., S.C., 1964). See also, *Rekeweg* v. *Federal Mutual Ins. Co.*, 27 FRD 431 (N.D., Ind., 1961); *Royal Exchange Assurance* v. *McGrath*, 13 FRD 150 (S.D., N.Y., 1952); *Turmenne* v. *White Consolidated Industries, Inc.*, 266 F.S. 35 (Mass., 1967).

From an examination of the record as abstracted, it seems clear to us that appellant was entitled to several, if not all, of the items requested in his motion for production of documents not previously produced and that denial of the motion in toto was an abuse of discretion because it constituted an undue limitation on his right of discovery. We have no hesitation in saying that the requests for items 1, 3 and 4 should have been granted because they would be calculated to lead to discovery of relevant evidence, whether favorable or unfavorable to Marrow. We speak with assurance on these items because the relevant portions of the documents giving rise to the requests were abstracted as a part of appellant's brief in response to the first motion for summary judgment filed by State Farm. If the record actually discloses the contents of documents and writings furnished, as stated in appellant's motion, in regard to items 2, 5, 6, 7 and 10, assuming that the conversations and contacts men-

tioned related to the Baltierrez policy or the claims arising out of the automobile collision, those requests should be granted. We do not speak with assurance on these items because the underlying facts are not stated in any part of the abstract of the record. We suggest that, if there is any serious question about the relationship of the requested items to this litigation, the material be submitted by State Farm to the trial judge, in camera, for a determination by him whether it should be furnished to appellant for inspection or copying by him. See *Olson Rug Co.* v. *N.L.R.B.,* 291 F. 2d 655 (7th Cir., 1961).

We should add that the trial court's ruling from which the appeal is taken was not in any way based upon the "work product" privilege and it does not appear that any of the requested material falls within that category. See *Curbo* v. *Harlan,* 253 Ark. 816, 490 S.W. 2d 467; *Dritt* v. *Morris,* 235 Ark. 40, 357 S.W. 2d 13; *Virginia Electric & Power Co.* v. *Sun Shipbuilding & Dry Dock Co.,* 68 FRD 397 (E.D., Va., 1975).

But little need be said about the point that appellant reserved for last in his brief. We simply do not agree that the evidence that can be gleaned from the depositions and the material obtained by discovery are sufficient to show that there was a prima facie showing of fraud on the part of State Farm, or that a genuine issue of fact existed on that issue. Taken collectively, they may justify a reasonable suspicion in Marrow's mind. But this does not create an issue on the question of fraud, even when we consider Marrow's testimony that Sharpe said that an agent of State Farm had misled him. Appellant characterizes this statement as double hearsay. We do not quibble about that classification, but, even though Sharpe's testimony to this effect would probably be admissible in the case against Sharpe, his statement to Marrow clearly would not be admissible against State Farm.

Appellant misapplies Rule 801 (d) (2) (iv) of Ark. Stat. Ann. § 28-1001 (Supp. 1977). The statement in question is a statement by Sharpe which Marrow proposes to offer against State Farm, but it is clear that Sharpe has never been an agent of State Farm. The subsection upon which appellant relies relates to admissions by an adverse party. While Sharpe was an adverse party, he certainly could not make ad-

missions on behalf of State Farm. This double hearsay is not admissible under Rule 805. It cannot possibly be said that each part of it conforms with an exception to the hearsay rule.

Without the alleged statement of Sharpe, it is difficult to see how it could seriously be argued that there was a genuine issue of fact as to fraud.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

We agree. HARRIS, C.J., and BYRD and HICKMAN, JJ.