ARKANSAS WILDLIFE FEDERATION, an Arkansas Not-For-Profit Corporation; Arkansas Nature Alliance, an Arkansas Not-For-Profit Corporation; The Hampton Landing Property Owners' Association, Inc., an Arkansas Not-For-Profit Corporation; The White River Conservancy, an Unincorporated Association; The Augusta Improvement Club, an Arkansas Not-For-Profit Corporation; Ducote Haynes, M.D.; Neal Galloway; Kenneth L. Rose; E.W. Ray; Charles Bowerman; Tommy M. Castleberry, Sr.; Greg Rawn; Oliver M. Eichelmann; Everett G. Oates; Bert Haralson, and David Carruth *v.*
ARKANSAS SOIL and WATER CONSERVATION COMMISSION, an Agency of the State of Arkansas, and the White River Regional Irrigation Water Distribution District, a Public Authority Established Pursuant to Act 114 of 1957

05-1009                                        233 S.W.3d 615

Supreme Court of Arkansas
Opinion delivered April 6, 2006

*Richard H. Mays*, for appellants.

*Mike Beebe*, Att'y Gen., by: *Patrick E. Hollingsworth*, Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Arkansas Wildlife Federation and others (referred to collectively as Arkansas Wildlife)[1] appeal from the circuit court's grant of summary judgment in favor of the Arkansas Soil and Water Conservation Commission (ASWCC) and the White River Regional Irrigation Water Distribution District.[2] Arkansas Wildlife asserts two points: (1) the circuit court erred in finding that the responsibilities of ASWCC under the Project Cooperation Agreement do not constitute the type of management or control of the fish and wildlife resources of the state that is reserved to the Arkansas Game and Fish Commission (AGFC) under Amendment 35 to the Arkansas Constitution; and (2) the statutes providing

---

[1] Appellants include four not-for-profit corporations, one unincorporated association, and eleven individuals. Arkansas Wildlife is a nonprofit membership organization committed to conservation and preservation of Arkansas' natural resources and consisting of approximately 2,500 members statewide, many of whom are hunters, anglers, farmers, agribusiness leaders, and conservationists. The individual appellants all claim to own land in the lower White River basin and ecosystem and claim to be conservationists, hunters, anglers, and nature observers who frequently participate in those interests in the lower White River basin. David Carruth, in addition to owning land and being involved in the abovementioned activities, is the President of the Arkansas Wildlife Federation.

[2] The appellees in this case include the ASWCC and the White River Regional Irrigation Water Distribution District. Because the appellants' argument is directed toward the ASWCC, we will refer to the appellees collectively as "the ASWCC" throughout this opinion. While the name of the ASWCC has recently been changed to the Arkansas Natural Resources Commission, the record of this case refers to this agency as the ASWCC.

authority to the ASWCC to make determinations of conditions relating to fish and wildlife as a basis for transfer of water from rivers and streams are unconstitutional.

Arkansas Wildlife asserts that the facts in this case are undisputed. On this point, the ASWCC contends that while the facts material to Arkansas Wildlife's summary-judgment motion are not disputed, it does not agree with every assertion and conclusion set forth by the appellants. As there were no findings of facts made by the circuit court, the following summary of the facts is gleaned from the pleadings, the record, and related case law.

The Grand Prairie Region of Arkansas, which has been a major rice production center for years, is expected to deplete its groundwater within the next decade. The water used to cultivate rice in the Grand Prairie Region has historically been obtained primarily from the Alluvial Aquifer. Arkansas Wildlife explains that since the 1920s, it has been widely recognized that the amount of water pumped from this aquifer for irrigation purposes has exceeded the aquifer's capacity to recharge naturally, thereby causing a steady decline in the aquifer's water level. The ASWCC asserts that this depletion will likely render the remaining groundwater unusable as a source of drinking water in the future.

The ASWCC explains that the Grand Prairie Area Demonstration Project (the Project) has, in its current form, been under development for over a decade. In the Water Resources Development Act of 1996, the United States Congress authorized the U.S. Army Corps of Engineers, through the Secretary of the Army, to proceed with the Project.

The Act provided that the scope of the project would include "ground water protection and conservation, agricultural water supply, and waterfowl management." Water Resources Development Act of 1996, Pub. L No. 104-303, § 363(a), 110 Stat. 3658 (1996). In a related case, the Eighth Circuit has recently described the Project as follows:

> The Grand Prairie Project was designed by the Corps to allow continued irrigation of the agricultural region while preserving the Alluvial Aquifer. The Corps issued a draft Environmental Impact Assessment (EIS) for public comment in early 1998. In July 1998 in response to the public comments, the Corps issued a draft General Reevaluation Report (GRR). The Final Environmental Impact Assessment (FEIS) was issued in 1999, and a Record of Decision

(ROD) was signed in 2000. The FEIS and ROD selected "Alter-native 7B" as the plan to be implemented. The Project has five components: (1) conservation of water by increasing agricultural efficiency of water usage, (2) reduction of water withdrawals from the Alluvial Aquifer so that there is no net loss of water and an end to drawing on the Sparta Aquifer for irrigation, (3) additional on farm reservoirs, (4) construction of a system that would pump excess water from the White River into the Grand Prairie region, and (5) various environmental improvement features.

*Arkansas Wildlife Federation v. U.S. Army Corps of Engineers*, 431 F.3d 1096, 1099 (8th Cir. 2005).

Arkansas Wildlife contends that the plan selected provides that some 560,000 acre feet of water would be pumped annually at a rate of 1,640 cubic feet per second from the White River from a pump station located near DeVall's Bluff into an extensive water distribution system consisting of approximately 291 miles of exist-ing streams and channels, 184 miles of new canals, and 200 miles of new pipelines, distributing irrigation water throughout Prairie and Arkansas Counties. According to Arkansas Wildlife, an "acre foot" is the amount of water required to cover one acre of land with one foot of water. There are 325,828 gallons of water in one acre foot. According to the plan, each year in the winter (before and during duck season), some 38,529 acres of harvested rice fields would be flooded for the promotion of "waterfowl management" providing 22,385,349 "duck-use-days" annually.

Arkansas Wildlife further states that the operation of the Project will remove approximately one billion gallons of water per day from the White River annually, which will reduce the water levels of the White River and its basin bottomlands by as much as one foot. According to Arkansas Wildlife, a one-foot decrease in water levels in the flat basin of the White River could cause the wetlands to be deprived of water and be destroyed or substantially modified. It continues by stating that a significant lowering of the river levels for an appreciable period of time will result in changes in the plant, fish, and animal life in the White River basin.[3]

---

[3] The ASWCC maintains that the potential one-foot change in river level asserted by Arkansas Wildlife is stated in the EIS to be a *maximum* of one foot or less, and for only the driest months. The ASWCC also contends that one billion gallons of water per day is the rated pump capacity of the planned pumping station and not the normal or usual withdrawal.

The Project Cooperation Agreement (PCA) dated June 2000 was entered into between the Department of the Army and the State of Arkansas, which serves as the "Non-Federal Sponsor." In the agreement, the State is represented by the Executive Director of the ASWCC. The White River Regional Irrigation Water Distribution District (the District) also signed the PCA, because it was expected to operate the Project according to an agreement between it and the ASWCC. Arkansas Wildlife adds that the AGFC was not a party to the PCA. The ASWCC states in its response that the complaint in this case, which was filed in 2004, more than four years after the PCA was signed, sought to enjoin the signing of the PCA and to challenge the authority of the ASWCC to enter into the PCA.

The ASWCC moved for summary judgment in part on grounds that the AGFC had not actually vetoed or threatened to veto the Project or the ASWCC's role in the Project.[4] The ASWCC additionally asserted that its statutory authority does not conflict with the constitutional authority of the AGFC under a reasonable interpretation of Amendment 35. Arkansas Wildlife filed a cross-motion for summary judgment on the basis that it had sustained its burden of showing, by undisputed facts, that it was entitled to summary judgment as a matter of law.

The circuit court granted summary judgment in favor of ASWCC and denied Arkansas Wildlife's cross-motion for summary judgment. In its order, the court made the following significant findings:

- The Court finds that the primary responsibility of the ASWCC under the Project Cooperation Agreement challenged by the Plaintiffs is that of funding, and that the responsibilities of the ASWCC under the Project Cooperation Agreement do not constitute the type of management or control of the wildlife resources of the State that is reserved to the Arkansas Game and Fish Commission under Amendment 35 to the Arkansas Constitution.

- The authority of the Arkansas Game and Fish Commission under Amendment 35 to the Arkansas Constitution is not inconsistent

---

[4] ASWCC moved for summary judgment on all five counts raised by Arkansas Wildlife. The grounds for summary judgment discussed here refer only to the basis for summary judgment on the issue raised in this appeal.

with the authority being exercised by the ASWCC in this case. The Court takes note of the fact that the Arkansas Game and Fish Commission has been consulted on this project for years, has made recommendations that have been implemented, and is aware of these proceedings and has not sought to intervene.

- The Court finds that there are no genuine issues of material fact that are determinative of the outcome of this case under applicable law.

## I. Amendment 35

Arkansas Wildlife argues, as an initial matter, that the circuit court erred in finding that the responsibilities of the ASWCC under the PCA do not constitute the type of management or control of the fish and wildlife resources of the state that is reserved to the AGFC under Amendment 35 to the Arkansas Constitution. Specifically, it contends that because the Grand Prairie Project contains a significant fish and wildlife component, the AGFC is vested with plenary authority over that component under Amendment 35. It concludes that the AGFC should at least have an equal voice in the Project and its management.

As noted in the circuit court's order and by the parties in this case, the AGFC is not a party and has not sought to intervene in this case. Rather, a group of private entities and individuals, which we have combined under the heading of Arkansas Wildlife, is asserting that the ASWCC is impinging on the AGFC's management-of-wildlife responsibilities under Amendment 35 and that the ASWCC does not have the authority to act in this case without the involvement of the AGFC. Arkansas Wildlife further claims that this is because components of the Project involve regulation of wildlife. Hence, Arkansas Wildlife is convinced that the AGFC has, at the very least, authority equal to that of the ASWCC's authority in representing the State in this Project.

■ We must confess to having some misgivings about considering the scope of AGFC's authority under Amendment 35, when that Commission has not been made a party to this action and has not sought to intervene to advance its position.[5] Never-

---

[5] While the AGFC has not made its position clear as to where it stands on the issues presented in this lawsuit, the AGFC did publish an issue brief on February 27, 2002, regarding the Grand Prairie Area Demonstration Project, in which it stated that it "is working

theless, we hold that Arkansas Wildlife has standing to raise the issue of the exclusiveness of AGFC's authority under Amendment 35, even in the absence of AGFC as a party. We turn then to the merits.

Amendment 35 states in pertinent part:

[§ 1.] The control, management, restoration, conservation and regulation of birds, fish, game and wildlife resources of the State, including hatcheries, sanctuaries, refuges, reservations and all property now owned, or used for said purposes and the acquisition and establishment of same, the administration of the laws now and/or hereafter pertaining thereto, shall be vested in a Commission to be known as the Arkansas State Game and Fish Commission, . . . .

. . . .

[§ 8.] . . . The Commission shall have the *exclusive* power and authority to issue licenses and permits, to regulate bag limits and the manner of taking game and fish and furbearing animals, and shall have the authority to divide the State into zones, and regulate seasons and manner of taking game, and fish and furbearing animals therein, and fix penalties for violations. No rule or regulations shall apply to less than a complete zone, except temporarily in case of extreme emergency . . . .

Ark. Const. amend. 35, §§ 1 and 8 (emphasis added).

We agree with the ASWCC that while the AGFC is vested with the *direct* control, management, restoration, conservation, and regulation of wildlife, the AGFC does not have the exclusive authority asserted by Arkansas Wildlife. Although Arkansas Wildlife relies on the case of *Harris v. Brooks*, 225 Ark. 436, 283 S.W.2d 129 (1955), where this court stated that the AGFC "will undoubtedly be interested in some instances" in the removal of water from lakes or streams "where injury to fish life is involved[,]" the ASWCC correctly notes that the AGFC was not a party to that

---

cooperatively with the Corps, U.S. Fish & Wildlife Service and the local sponsor to resolve any outstanding fish and wildlife resource issues and concerns." It also noted in the issue brief that "[f]ederal laws require the AGFC to be consulted on federally funded, licensed, or permitted water resources development activities for the purpose of conservation of wildlife resources by preventing loss of or damage to such resources, as well as for the development and improvement of those resources."

litigation; nor was the extent of its authority or power at issue in that case. 225 Ark. at 444, 283 S.W.2d at 134.

We further note that this court has discussed the AGFC's broad power under Amendment 35 to regulate wildlife by promulgating rules, but we have also recognized that the AGFC's "discretion is not unfettered." *Arkansas Game & Fish Comm'n v. Murders*, 327 Ark. 426, 429, 938 S.W.2d 854, 855 (1997). In *Murders*, an AGFC regulation prohibiting road hunting was found by this court to be unconstitutionally overbroad. This court held that the AGFC's "exclusive power and authority to regulate the manner of taking game, to regulate seasons, and to fix penalties for violation of the regulations[,] . . . does not translate into a general power to regulate the general possession of all firearms on city, county, state, or federally maintained roads or rights-of-way." *Murders*, 327 Ark. at 429, 938 S.W.2d at 855 (internal quotations omitted).

Unlike the case in *Murders*, the AGFC is not a party in the instant case. While we held that the AGFC in *Murders* had enacted a regulation giving itself more authority than Amendment 35 allowed, the AGFC in the case before us has not asserted that its authority is as broad as Arkansas Wildlife maintains that it is. Accordingly, the issue in this case is better described as whether, by virtue of Amendment 35, the AGFC has the power to prevent the destruction, manipulation, or alteration of natural resources, including streams and rivers, when such changes to those resources will allegedly have a collateral impact on wildlife or wildlife resources. We agree with the ASWCC that granting the AGFC such expansive power under Amendment 35 would produce absurd results in that it would give the AGFC unfettered authority far beyond the plain language of Amendment 35.

To illustrate that point, the ASWCC emphasizes that such an interpretation would invalidate the statutory duties of all public agencies and commissions charged with regulating natural resources other than the AGFC. For example, the mission of the Arkansas Forestry Commission is "to promote forest resource health, conservation, and stewardship." *See* Ark. Code Ann. § 15-31-101(b) (Repl. 2003). Under Arkansas Wildlife's view, however, forests provide shelter and sustenance to wildlife and, thus, are wildlife resources under Amendment 35. Thus, according to Arkansas Wildlife, the AGFC's authority would trump the

authority of the Forestry Commission because the AGFC's power is derived from the Arkansas Constitution and not merely from a statute.

The ASWCC goes on to correctly observe that Amendment 35 specifically grants "*exclusive* power and authority" to the AGFC in only three areas: (1) the issuance of licenses and permits, (2) the regulation of bag limits, and (3) the regulation of the manner of taking game and fish and furbearing animals. Ark. Const. amend 35, § 8 (emphasis added). Section 1 of Amendment 35 vests in the AGFC the authority to manage, restore, control, and regulate wildlife and wildlife resources in the state. That section does not, however, state that the AGFC's authority in this area is *exclusive*. We, therefore, conclude that the AGFC's authority granted to it under section 1 of Amendment 35 is not exclusive, both because the language of this section does not include words of exclusivity and because such an interpretation would lead to absurd results that would potentially invalidate the authority of many state agencies. While the AGFC clearly has the authority to be involved in the direct regulation, control, and management of wildlife and wildlife resources, we do not conclude that Amendment 35 grants the AGFC the authority to control, regulate, and manage all decisions regarding natural resources solely because those decisions might have some collateral impact on the state's wildlife or wildlife resources.

There is, too, the preemption point raised by the ASWCC. The ASWCC explains that the evidence relied upon by Arkansas Wildlife to support its case concerns the potential effect of the Project and not the ASWCC's obligations under the PCA. According to the ASWCC, this is a critical distinction, because it is the legitimacy of the ASWCC's authority to act as a non-federal sponsor that is at issue in this case, and not the entire Project. As already stated, the Project was, in fact, authorized by the Water Resources Development Act of 1996. The ASWCC cites to *United States v. Grand River Dam Authority*, 363 U.S. 229 (1960), for the proposition that the United States has the supreme authority, on its own, to utilize or regulate the flow of water in the White River, because the river is a navigable waterway. The ASWCC adds that Congress has granted to the Corps of Engineers the general authority to regulate wetlands, ordering the Secretary of the Army to give "projects for the protection, restoration, or enhancement of aquatic and associated ecosystems . . . equal consideration with

projects relating to irrigation, navigation, or flood control." 16 U.S.C. § 3956(a). The ASWCC finally asserts that based on federal case law, such as *Louisiana Public Service Commission v. Federal Communications Commission*, 476 U.S. 355 (1986), contrary state laws are preempted to the extent they stand as an obstacle to the accomplishment of the full objectives of Congress. Thus, the ASWCC concludes that based on principles of federal preemption, the federal Project itself cannot be challenged under Arkansas law. We agree.

We further agree that the circuit court was correct in determining that the ASWCC's role in the Project was principally one of funding, not wildlife management. From our review of the PCA, it is clear that the federal government is the ultimate authority for project implementation. The Project description states in the PCA, for example, that the Government[6] "intends to accomplish construction of" the Project's features. Although the Government affords the Non-Federal Sponsor[7] "the opportunity to review and comment on the solicitations for all contracts" and on "all contract modifications," it provides that "the contents of solicitations, award of contracts, execution of contract modifications, issuance of change orders, resolution of contract claims, and performance of all work on the Project (whether the work is performed under contract or by Government personnel), shall be *exclusively* within the control of the Government." (Emphasis added.) Throughout the PCA, there are references to the Government's exclusive control and sole discretion to make decisions regarding the Project.

However, with respect to the role of the ASWCC, the Government does mandate that upon notification, and in accordance with the agreement, and for so long as the Project is authorized, "the Non-Federal Sponsor shall operate, maintain, repair, replace, and rehabilitate [(OMRR&R),] the Project or the functional portion of the Project, *at no cost to the Government*, in a manner compatible with the Project's authorized purposes and in accordance with applicable Federal and State laws as provided in Article XI of this Agreement and specific directions prescribed by the Government in the OMRR&R Manual and any subsequent

---

[6] The PCA refers to the Department of the Army (i.e., the federal government), as the "Government."

[7] The PCA refers to the "Non-Federal Sponsor," which, in this case, is the ASWCC.

amendments thereto." (Emphasis added.) We conclude, as a result, that the ASWCC's primary responsibility under the PCA was one of funding.

■ In sum, the circuit court correctly found that the responsibilities of the ASWCC under the PCA do not constitute the type of management or control of the wildlife resources of the State that is reserved to the AGFC under Amendment 35 but rather involve a federal project and a navigable river where the role of the ASWCC is principally one of funding. We affirm the circuit court on this point.

### II. Constitutionality of Soil & Water Commission Statutes

Arkansas Wildlife next argues that certain statutes under which the ASWCC proposes to transfer water from rivers of Arkansas are unconstitutional because they violate Amendment 35. Thus, it concludes that the ASWCC does not have the sole authority to enter into the Agreement with the Corps of Engineers for implementation of the Project.

■ We need not address this issue. Arkansas Wildlife did not obtain a ruling on this issue from the circuit court. Therefore, this argument is not preserved for appeal, as this court is left without a decision of the circuit court to review on this matter. *City of Barling v. Fort Chaffee Redevelopment Auth.*, 347 Ark. 105, 123, 60 S.W.3d 443, 454 (2001) (holding that "[i]t is well settled that to preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling below").

### III. Laches

■ Laches was also argued by the ASWCC as an alternative reason to affirm. Because we affirm for the reasons stated under Issue I, we need not address this point.

Affirmed.

GLAZE, J., not participating.