2012 Ark. 121

**GRAND VALLEY RIDGE, LLC,**
and Thomas A. Terminella,
Appellants

v.

**METROPOLITAN NATIONAL BANK;**
Rogers Bancshares, Inc.; Doyle Rogers Company; Doyle Rogers, Sr.; Josephine Raye Rogers; Barbara Hoover; Tommy Lasiter; Richard D. Parker; Lunsford Bridges; Doyle W. Rogers, Jr.; and Susan F. Smith, Appellees.

No. 11–483.

Supreme Court of Arkansas.

March 15, 2012.

Robert A. Ginnaven III, Fayetteville, for appellant.

Philip E. Kaplan, Jo Ann Compton Maxey and Clayborne S. Stone, Little Rock, for appellee.

COURTNEY HUDSON GOODSON, Justice.

Appellants Grand Valley Ridge, LLC (Grand Valley) and Thomas A. Terminella (Terminella), a member of Grand Valley, appeal an order of the Washington County Circuit Court granting a motion to dismiss and a motion for sanctions filed by appellees Metropolitan National Bank; Rogers Bancshares, Inc.; Doyle Rogers Company; Doyle Rogers, Sr.; Josephine Raye Rogers; Barbara Hoover; Tommy Lasiter; Richard D. Parker; Lunsford Bridges; Doyle W. Rogers, Jr.; and Susan F. Smith (collectively MNB). Appellants also challenge the circuit court's denial of their motions to compel and to set aside the judgment. For reversal, appellants argue that the circuit court erred in denying their motion to compel MNB's financial records; in denying their motion to set aside the judgment; in finding that Terminella had no standing to sue; in granting summary judgment on the nonsuited, "dangling issues" based on the doctrines of res judicata, collateral estoppel, and the statute of limitations; in dismissing claims based on the Arkansas Deceptive Trade Practices Act (ADTPA); and in awarding Rule 11 sanctions against their counsel. We have jurisdiction pursuant to Arkansas Supreme Court Rule 1–2(a)(7), as this case

involves a subsequent appeal in our court. We affirm.

## I.  *Facts*

We set out a portion of the relevant facts in the first appeal of *Grand Valley Ridge, LLC v. Metropolitan National Bank*, 2010 Ark. 402, 2010 WL 4264508 (*Grand Valley I* ):

In August 2005, Terminella presented a request for financing to MNB, seeking to fund the completion of the Grand Valley Ridge subdivision in Washington County. MNB agreed to loan Grand Valley $9,630,000.00, and on September 13, 2005, Grand Valley executed, among other documents, a promissory note, a construction loan agreement, and a construction mortgage. Separately, Terminella executed a commercial guaranty.

According to an August 22, 2005 Commercial Credit Memorandum, the loan had a one-year "interest carry." Grand Valley and MNB budgeted $572 million of the project for this interest carry. Commencing in October 2005, Grand Valley authorized MNB to draft each month's interest payments. By September 2006, Grand Valley had drawn $453 million in interest carry. In October 2006, Terminella made an out-of-pocket payment on the interest, and he indicated to MNB that Grand Valley would not be able to carry the monthly interest. Grand Valley subsequently asked MNB whether it would consider changing the terms of the loan from interest due monthly to interest due annually in order to allow Grand Valley to complete the first phase of its subdivision and market the lots. MNB denied the request, but elected to allow Grand Valley to utilize the remaining interest carry that had been in the original budget, or approximately $94,000.

Grand Valley failed to make its interest payments from January 2007 through April 2007. In April and May 2007, MNB sent several memoranda to Terminella attempting to work out an arrangement on the loan. The parties were apparently unable to reach an agreement, however, and MNB filed a petition for foreclosure on May 30, 2007.

Terminella and Grand Valley filed an answer that denied the loan was in default. In addition, they filed a counterclaim alleging that MNB had breached the contract. The counterclaim also raised counts of constructive fraud, promissory and equitable estoppel, conversion, negligence, and breach of the covenant of good faith and fair dealing. In an amended counterclaim, Terminella and Grand Valley raised claims of breach of contract and tortious interference with a business expectancy. A second amended counterclaim reasserted the claims of breach of contract, negligence, and interference with contract, and included a demand for a jury trial.

MNB filed a motion objecting to Terminella and Grand Valley's demand for a jury trial, arguing that, because the lawsuit was fundamentally an equitable action for foreclosure, there was no right to a jury trial. The circuit court entered an order on October 13, 2008, sustaining MNB's objection to the jury-trial demand and setting the case for a bench trial. MNB also filed a motion for summary judgment in which it contended, among other things, that Terminella, as guarantor, lacked standing to assert any individual action against the bank. The trial court agreed and granted MNB's summary-judgment motion on that issue.

The case proceeded to a bench trial in October of 2008. During the course of the trial, Terminella and Grand Valley moved to take a voluntary nonsuit of

their claims of negligence and tortious interference with contract. The circuit court entered an order granting the motion pursuant to Ark. R. Civ. P. 41(a)(1) on October 30, 2008, dismissing Counts II and III without prejudice.[1]

The circuit court ultimately issued a letter opinion on February 3, 2009, in which it found that MNB had not breached the contract with Grand Valley. The court further found that the note between Grand Valley and MNB was a demand note and that Grand Valley failed to pay the balance due thereon. In addition, the court rejected Grand Valley's claims that MNB had breached the implied covenant of good faith and fair dealing, finding that Arkansas does not recognize such a cause of action. The court concluded that MNB was entitled to judgment on its decree of foreclosure and to a dismissal of the second amended counterclaim.

*Grand Valley*, 2010 Ark. 402, at 1–2, 2010 WL 4264508.

There are other relevant facts necessary to a full understanding of the current appeal that were not included in our factual recitation in *Grand Valley, supra.* On August 1, 2008, appellants filed a motion to compel the production of certain bank records, which included (1) budgets for MNB's northwest Arkansas bank branches; (2) operating statements for MNB's northwest Arkansas bank branches; (3) strategic plans for MNB's northwest Arkansas bank branches; and (4) minutes of MNB's Special Assets Committee meetings. The circuit court subsequently held a hearing and denied appellants' motion to compel. Additionally, on October 20, 2008, the circuit court entered an order ruling that Terminella had no standing to sue MNB and that, as a result, his counterclaims were dismissed with prejudice.

On February 27, 2009, the circuit court entered a foreclosure decree incorporating the court's letter opinion. In its order, the circuit court granted MNB's petition for foreclosure and awarded MNB a judgment against appellants for $7,614,166 and attorney's fees and costs in the amount of $846,223.74. Appellants then moved for a new trial. The circuit court denied the motion, and appellants brought their first appeal. We dismissed the appeal without prejudice in *Grand Valley I, supra,* holding that the circuit court's order was not final and appealable because the nonsuited negligence and interference-with-business-expectancies claims could be refiled.

During the course of the litigation, MNB entered into an agreement with the Office of the Comptroller (OCC) wherein MNB admitted that it had engaged in unsound banking practices for loaning too much money without sufficient capital reserves, particularly in northwest Arkansas. According to appellants, a prominent business journal reported that a routine examination by the OCC prompted MNB to restate its year-end report for 2008 and to lower its reported earnings by $7.8 million. Based on these publications, appellants disputed MNB's representations to the court in 2008 that MNB made money during that time.

---

1. In *Grand Valley I, supra,* we noted that, although the order stated at one point that it was dismissing Terminella and Grand Valley's "causes of action for breach of contract and interference with a contract," the court explicitly ruled from the bench that it was dismissing the negligence and tortious-interference claims. The order itself also stated that it was dismissing "Counts II and III of [the] Second Amended Counterclaim." Counts II and III were the claims of negligence and interference with a contract. Therefore, we stated that the circuit court's statement in the order, which dismissed the "breach of contract" cause of action, appeared to be a scrivener's error.

Following our dismissal in *Grand Valley I, supra,* appellants, on November 22, 2010, filed a complaint, alleging their original nonsuited counterclaims and adding additional claims, including an ADTPA claim. Appellants amended their complaint twice and added other named defendants.[2] MNB filed a motion to strike or, alternatively, a motion to dismiss appellants' complaint, arguing that appellants' complaint should be struck and dismissed because (1) the court lacked jurisdiction and (2) the complaint failed to state facts upon which relief could be granted, pursuant to Rule 12(b)(6). MNB also filed a motion for sanctions pursuant to Rule 11 of the Arkansas Rules of Civil Procedure. In their motion, MNB alleged that appellants' complaint was barred by res judicata, collateral estoppel, and the statute of limitations; that the complaint was not well grounded in fact and was not warranted by existing law; that the complaint was filed for the purpose of harassing appellees; and that appellants violated Rule 11. Appellants filed a motion to set aside the judgment on the breach-of-contract claims, pursuant to Rule 60 of the Arkansas Rules of Civil Procedure, arguing that MNB committed fraud by lying to the court about its financial condition and that the bank did not fund the balance of the loan because of its troubled financial condition.

The circuit court held a hearing on the parties' motions. On March 17, 2011, the circuit court entered a summary-judgment order granting MNB's motion to dismiss appellants' second amended complaint and MNB's motion for Rule 11 sanctions. In its order, the circuit court made the following rulings: (1) that Terminella was barred by the doctrines of res judicata and collateral estoppel from asserting any claims against appellees for interference of contract and business expectancies, negligence, or violation of the ADTPA and that Terminella did not have standing as a guarantor to raise the ADTPA claim; (2) that the October 30, 2008 order dismissing without prejudice Terminella's claims for tortious interference and negligence against MNB was a scrivener's error because the record clearly showed that all of his claims were dismissed with prejudice by the October 20, 2008 order and that those claims were filed after the expiration of the statute of limitations and, as a matter of law, were dismissed; (3) that Grand Valley was granted a voluntary nonsuit for its claims against MNB for intentional interference with contract/business expectancies and negligence; that Grand Valley failed to refile an action for its tort claims against MNB within one year as required by Arkansas Code Annotated section 16–56–126 or against any appellee within the three years as required by Arkansas Code Annotated section 16–56–105; and that Grand Valley was barred from asserting its tort claims against appellees; (4) that Grand Valley was barred by the doctrines of res judicata and collateral estoppel from asserting its tort claims or claims for violation of the ADTPA against any of the appellees; (5) that appellants failed to file a claim for violations of the ADTPA before a full trial was held as required by Rule 13

**2.** The complaint listed the separate appellees as follows. Rogers Bancshares, Inc. is a registered bank holding company that owns and controls MNB. Doyle Rogers Company is a commercial real estate company. Doyle Rogers Sr. is MNB's chairman of the board of directors and acts as the bank's president and chief executive officer. Barbara Hoover is a member of MNB's board of directors. Tommy Lasiter is a member of MNB's board of directors and became vice president of Doyle Rogers Company in 1978. Richard D. Parker is a member of MNB's board of directors. Lunsford Bridges is MNB's chief executive officer. Doyle W. Rogers, Jr. is a member of MNB's board of directors, and Susan F. Smith acts as senior executive vice president and chief operations officer.

of the Arkansas Rules of Civil Procedure and that appellants were barred from asserting any claim against appellees for violations of the ADTPA; (6) that appellants failed to obtain leave from the court to file a third-party complaint against separate appellees Rogers Bancshares, Inc., Doyle Rogers Company, Doyle Rogers, Sr., Josephine Raye Rogers, Barbara Hoover, Tommy Lasiter, Richard D. Parker, Lunsford Bridges, Doyle W. Rogers, Jr., and Susan F. Smith in the previous litigation and that appellants were barred from asserting their claims against those appellees other than MNB; (7) that appellants' claims against separate appellees, other than MNB, were also barred by the doctrines of res judicata and collateral estoppel; (8) that Terminella's claims were dismissed on October 20, 2008, for lack of standing and because appellants' claims were barred, appellants' claims "were not well grounded in fact, were not warranted by existing law, and there existed no good faith arguments for the extension, modification, or reversal of existing law" and that appellants filed the complaint "with the intent to harass [appellees] or to cause unnecessary delay or needless increase in the cost of litigation, and for this reason, the circuit court granted Rule 11 sanctions and awarded appellees' attorneys' fees in the amount of $5,000 to be assessed against appellants and their attorney; and (9) that appellants failed to provide prima facie evidence that MNB lied about its financial condition during the course of the previous litigation and failed to plead a meritorious defense; that appellants' allegations concerning MNB's financial condition were irrelevant to the claims asserted by appellants in the litigation; and that the court denied appellants' motion to set aside the judgment. From this order, appellants timely filed their notice of appeal.

## II. *Points on Appeal*

On appeal, appellants make six allegations of error. Because appellants challenge the circuit court's grant of summary judgment in favor of appellees, our standard of review regarding summary judgment applies. In *Arkansas Department of Human Services v. Civitan Center, Inc.,* 2012 Ark. 40, 386 S.W.3d 432, we stated:

The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. A trial court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. Summary judgment is also appropriate when the trial court finds that the allegations, taken as true, fail to state a cause of action. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.

*Id.* at 6–7, 386 S.W.3d 432 (citations omitted).

### A. Terminella's standing

■ Terminella argues that the circuit court erred in finding that he had no standing to sue on his counterclaim for breach of contract. Specifically, he contends that the circuit court correctly stated the law regarding a third-party beneficiary but failed to apply the law properly to the facts of this case. Terminella further asserts that he suffered damages by MNB's conduct that were separate and apart from the damages to Grand Valley. MNB responds that the circuit court correctly

found that Terminella, as a guarantor, had no standing to assert an individual breach-of-contract action against MNB arising out of the loan documents when MNB and Grand Valley were the only two parties on the note and mortgage.

■ We treat the question of standing to sue as a threshold issue. *Farm Bureau Ins. Co. of Ark., Inc. v. Running M Farms, Inc.*, 366 Ark. 480, 237 S.W.3d 32 (2006). It is a fundamental principle in American jurisprudence that in order to bring a lawsuit against an opposing party, one must have standing to do so. *Id.* Without standing, a party is not properly before the court to advance a cause of action. *Hufsmith v. Weaver*, 285 Ark. 357, 687 S.W.2d 130 (1985). We must consider whether Terminella had standing to sue in this case, although he was not a party to the loan agreement. The question of standing is a matter of law for this court to decide, and this court reviews questions of law de novo. *Farm Bureau, supra.*

In *Farm Bureau, supra*, we cited *First Commercial Bank, N.A. v. Walker*, 333 Ark. 100, 969 S.W.2d 146 (1998), for the proposition that a guarantor is defined as "one who makes a contract, which is distinct from the principal obligation, to be collaterally liable to the creditor if the principal debtor fails to perform." *Id.* at 112, 969 S.W.2d at 152. In *Walker, supra*, Walker, as the individual stockholder and guarantor of the corporation, claimed that he should have standing to bring a lender-liability action against a bank because he was a party to the loan agreements between his company, Aerth, and the bank and because he was a guarantor of the various loans. However, we concluded that Walker acted as a representative of the corporation and as a guarantor of the debt and that these actions did not provide him with standing to maintain a separate, individual action against the bank apart from the corporation. Accordingly, we reversed and dismissed Walker's claim due to lack of standing. Similarly, in *Farm Bureau, supra*, we reasoned that the status of Sumner Mitchell as a guarantor of the farming corporations did not give him standing to sue Farm Bureau individually as a third-party beneficiary. We held that the circuit court erred in refusing to grant summary judgment in favor of Farm Bureau on the issue that Mitchell lacked standing to sue as an individual, and we reversed the judgment in favor of Mitchell and dismissed.

In the present case, the circuit court granted MNB's motion for summary judgment in its October 30, 2008 order, ruling that the guarantors, including Terminella, had no standing to sue MNB. This ruling was reiterated in the circuit court's March 17, 2011 order when the court stated that "Terminella is barred by the doctrines of res judicata and collateral estoppel from now asserting any claims. . . . Mr. Terminella has no more standing as a guarantor to raise the ADTPA claim than he did the other claims." The court further stated that "Terminella's claims against [MNB] were dismissed with prejudice on October 20, 2008, for lack of standing[.]"

Here, Terminella signed the promissory note and other loan documents in his capacity as a member of Grand Valley. The only document that Terminella signed in his individual capacity was a commercial guaranty, which is a separate contract between MNB and Terminella. As guarantor, he had no standing to assert an individual breach-of-contract action against MNB on the loan documents. Therefore, we hold that the circuit court properly granted MNB's motion for summary judgment on the standing issue. Accordingly, we affirm on this point. Because we affirm the circuit court's ruling on standing on this basis, we decline to address

appellants' arguments regarding the scrivener's error contained in the circuit court's October 30, 2008 order.

### B. Motion to compel MNB's financial records

■ The following four issues will address Grand Valley's appeal relative to MNB. Grand Valley argues that the circuit court abused its discretion in denying its motion to compel MNB's financial records. Specifically, Grand Valley contends that its request for the production of these documents was necessary to prove that MNB's reason for refusing to fund Grand Valley's loan was due to the bank's unsound banking practices.

MNB counters that the circuit court did not abuse its discretion in denying Grand Valley's request for the production of documents because the requested documents were available to the public. MNB asserts that Grand Valley could have reviewed these public documents at the time of the alleged breach of contract to determine MNB's financial condition.

■ We have long held that the trial court has wide discretion in matters pertaining to discovery and that a circuit court's decision will not be reversed absent an abuse of discretion. *Parker v. Southern Farm Bureau Cas. Ins. Co.*, 326 Ark. 1073, 935 S.W.2d 556 (1996); *Stein v. Lukas*, 308 Ark. 74, 823 S.W.2d 832 (1992) (citing *Marrow v. State Farm Ins. Co.*, 264 Ark. 227, 570 S.W.2d 607 (1978)). Although this court recognizes the magnitude of the circuit court's discretion in discovery matters, it has found an abuse of discretion where there has been an undue limitation of substantial rights of the appellant under the prevailing circumstances. *Rickett v. Hayes*, 251 Ark. 395, 473 S.W.2d 446 (1971). A motion for production of documents must be considered in light of the particular circumstances which give rise to it, and the need of the movant for the information requested. *Marrow, supra.* In cases where the appellant is relegated to having to prove his claim by documents, papers, and letters kept by the appellee, the scope of discovery should be broader. *Id.* We consider this factor in deciding whether there has been an abuse of discretion in denying a discovery request. *Id.* The goal of discovery is to permit a litigant to obtain whatever information he or she may need to prepare adequately for issues that may develop without imposing an onerous burden on his adversary. *Id.*

In the present case, Grand Valley, in an attempt to prove that MNB engaged in negative operations during the loan period, filed a motion to compel the following documentation: (1) budgets for MNB's bank branches in northwest Arkansas; (2) operating statements for MNB's bank branches in northwest Arkansas; (3) MNB's strategic plan for northwest Arkansas; and (4) minutes of the Special Asset Committee meeting. According to Grand Valley, it filed the motion to compel after MNB entered into an agreement with the OCC allegedly admitting that it had engaged in unsound banking practices, particularly for having loaned too much money in northwest Arkansas without sufficient capital reserves. After holding a hearing on Grand Valley's motion, the circuit court denied the motion.

First, Grand Valley's request for the budget and operating statements for MNB's individual branches was not relevant because public documents, such as quarterly reports published by the Federal Financial Institutions Examination Council, known as call reports, and Uniform Bank Performance Reports ("UBPRs"), demonstrated MNB's true financial situation and were publicly available on the FDIC's website. Further,

Grand Valley failed to demonstrate the relevance of these requests. The budget and operating statements of the individual bank branches were irrelevant because the judgment was for breach of contract on a demand note, and the circuit court properly determined that MNB could call the note at any time. Because it was a demand note, MNB was under no obligation to continue financing the project upon default, notwithstanding its financial condition. For these reasons, we hold that the circuit court did not abuse its discretion in denying Grand Valley's motion to compel.

█ Second, with regard to Grand Valley's request for MNB's strategic plan, the circuit court concluded at the hearing that the strategic plan was to be "disclosed under protective order" to Grand Valley. However, in its October 20, 2008 order disposing of pretrial motions, the court stated, "[MNB's] motion in limine to exclude MNB's strategic business plan is taken under advisement, and the court reserves its ruling until trial[.]" Additionally, the court inquired about the status of the minutes of the Special Asset Committee but determined that they did not exist. From the bench, the circuit court stated, "If they turn up, the minutes of that Special Asset Committee, we'll argue about that when they show up, but right now, they don't have any so that pretty well ends that discussion." Although Grand Valley's attorney raised the issue at the hearing, Grand Valley ultimately did not obtain a ruling on either the strategic plan or the minutes from the trial court, which operates as a waiver of this argument on appeal. *See Morgan v. Chandler,* 367 Ark. 430, 241 S.W.3d 224 (2006); *see also Ark. Wildlife Fed'n v. Ark. Soil & Water Conservation Comm'n,* 366 Ark. 50, 233 S.W.3d 615 (2006) (holding that when an appellant fails to obtain a ruling on an issue from the circuit court, his or her

argument is not preserved for appeal because there is no decision of the circuit court for this court to review). For these reasons, we are precluded from reaching Grand Valley's arguments regarding the strategic plan or minutes of the Special Asset Committee.

C. Motion to set aside the judgment

█ Next, Grand Valley argues that the circuit court erred in denying its motion to set aside the judgment. Grand Valley claimed it discovered new evidence that MNB had misrepresented its financial condition to the circuit court. Grand Valley asserts that MNB provided inaccurate reports to the OCC and subsequently misrepresented those reports to the circuit court. MNB responds that the circuit court properly denied its motion to set aside the judgment and that nothing in the record reflects that it submitted inaccurate or misleading reports to the OCC.

█ A circuit court may set aside a judgment for "misrepresentation or fraud ... by an adverse party." Ark. R. Civ. P. 60(c)(4) (2011). It is within the discretion of the circuit court to determine whether it has jurisdiction under Rule 60 to set aside a judgment, and the question on appeal becomes whether there has been an abuse of that discretion. *New Holland Credit Co., LLC v. Hill,* 362 Ark. 329, 208 S.W.3d 191 (2005); *Burns v. Madden,* 271 Ark. 572, 609 S.W.2d 55 (1980).

█ In order to prove fraud, a plaintiff must prove five elements under Arkansas law: (1) that the defendant made a false representation of material fact; (2) that the defendant knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) that the defendant intended to induce action or inaction by the plaintiff in reliance upon the representation; (4) that the plaintiff justifiably relied

on the representation; and (5) that the plaintiff suffered damage as a result of the false representation. *Jewell v. Fletcher*, 2010 Ark. 195, 377 S.W.3d 176. The party seeking to set aside a judgment on the basis of fraud has the burden of proving fraud by clear, cogent, and convincing evidence, or as our courts have sometimes said, clear, strong, and satisfactory proof. *Id.*

In the present case, Grand Valley filed a motion to set aside the circuit court's judgment based on MNB's alleged fraud on the court. In its motion, Grand Valley, pursuant to Rule 60(c)(4), alleged:

1. . . . Since as early as 2006, [MNB] has been misrepresenting its financial condition to the public authorities, and . . . the bank affirmed such misrepresentation and lied directly to this Court about its financial condition in order to prevent [Grand Valley] from discovering the truth. It is submitted that the bank's misrepresentation convinced this Court to disallow [Grand Valley] the opportunity to obtain discovery of [MNB's] private financial records, which [Grand Valley] believed to be false, and which has since been proven to be false by the bank's own public records.

2. If this Court had the benefit of evidence that now proves that [MNB] was misrepresenting its financial condition at the trial of this matter, it is respectfully submitted that this Court may have believed [Grand Valley's] allegation, that the bank did not fund the balance of the loan because of its troubled financial condition, and may have ruled in favor of [Grand Valley] instead of the bank.

. . . .

4. The record in this matter is now clear that [MNB] misrepresented its financial condition to this Court prior to trial, and that [MNB] obtained this court's favorable judgment by such misrepresentation.

To support these contentions, Grand Valley offered the affidavit of its retained expert, William R. Welch, and responses to various pleadings filed by MNB. In his affidavit, Welch stated that he reviewed the publicly available Consolidated Reports of Condition and Income prepared by MNB from 2004 to 2010. According to Welch, MNB's net loss in 2009 depleted all earnings from 2004 to 2008. Welch opined that this loss was principally due to excessive loan-loss provisions. Welch concluded that MNB "was clearly a troubled bank in 2007, and, more likely than not was a troubled bank as early as 2006, with serious credit risk management and concentration issues."

From the bench on March 11, 2011, the circuit court referenced its ruling in a February 3, 2009 letter order that Grand Valley agreed that the note was a demand note. The circuit court stated:

I know [Welch] says that, well, [MNB] took these losses—on the books they put their losses out in the future, they didn't show them in the right years, but I haven't seen anything that shows those losses. Anyway, I've seen [Welch's] opinion, and I've read it, but with respect to the court's case with my finding that this was a demand note, you know, it's irrelevant whether they didn't fund—continue to fund the loan—I guess they funded quite a bit of the loan, but they didn't continue to fund the loan—because they were in bad financial condition because I ruled as a matter of law that under this contract they had a right not to fund the loan, that it was a demand note. So I think that issue is really irrelevant to what we're doing here today.

The court memorialized its bench ruling in its March 17, 2011 order as follows:

That [Grand Valley] [has] failed to provide prima facie evidence that [MNB] lied about its financial condition during the course of the previous litigation and failed to plead a meritorious defense. [Grand Valley's] allegations concerning [MNB's] financial condition are irrelevant to the claims asserted by [Grand Valley] in this litigation and the previous litigation. Therefore, [Grand Valley's] motion to set aside the judgment is denied.

Here, Grand Valley asserts that the circuit court abused its discretion in denying the motion to vacate because it submitted evidence establishing that MNB committed fraud by stating that the bank had gains in 2007 and part of 2008. These allegations, it maintains, are supported in part upon the affidavit of Welch, their expert. However, Welch's affidavit contains an opinion theorizing that MNB's earnings should have been recalculated starting in 2006. While Welch theorizes that MNB's losses in 2009 were excessive and additional losses must have occurred in 2006 through 2008, nothing else in the record supports Welch's claim. Thus, Grand Valley has failed in its burden of proof to establish facts sufficient to show that any fraud was perpetrated on the court in the rendition of its decree of foreclosure. *Jewell, supra.* More significantly, as previously discussed, Grand Valley does not challenge the circuit court's ruling that its note was a demand note that could be called at any time. Therefore, we hold that Grand Valley's allegations are not sufficient to set aside a judgment pursuant to Rule 60(c)(4).

### D. Nonsuited claims

Grand Valley argues that the circuit court erred in granting summary judgment on the nonsuited, "dangling issues" based on the doctrines of res judicata, collateral estoppel, and the statute of limitations. Specifically, Grand Valley contends that the statute of limitations was tolled and that MNB waived its right to assert res judicata and collateral estoppel as defenses in the second proceeding. In response, MNB argues that the circuit court properly granted their motion for summary judgment on Grand Valley's claims for negligence and interference with business expectancies based on the applicable statute of limitations.

In resolving the statute-of-limitations issue, two statutes come into play. The savings statute states that the plaintiff may commence a new action within one year after suffering a nonsuit. Ark.Code Ann. § 16–56–126 (Repl.2006). Further, pursuant to Arkansas Code Annotated section 16–56–105 (Repl.2005), a three-year statute of limitations applies to tort actions. The statute begins to run when the negligent act occurred. *Stroud v. Ryan,* 297 Ark. 472, 763 S.W.2d 76 (1989).

Here, Grand Valley's claims for negligence and interference with business expectancies are barred by the statute of limitations under both provisions. First, Grand Valley failed to salvage its tort claims within one year pursuant to the savings statute found at section 16–56–126. The circuit court granted a voluntary nonsuit on October 30, 2008, and Grand Valley had until October 30, 2009, to file its claims. However, Grand Valley did not file its complaint until November 22, 2010, more than two years after taking its voluntary nonsuit. By that time, the one-year period to "commence a new action within one (1) year after the nonsuit," pursuant to section 16–56–126, had already expired.

Second, Grand Valley failed to file its tort claims within three years pursuant to section 16–56–105. In the complaint, Grand Valley alleged that MNB refused to

fund the loan in the fall of 2006; however, Grand Valley did not file its complaint until November 22, 2010, which is more than three years after Grand Valley's tort claims could have arisen. The three-year statute of limitations to file tort claims "founded upon any contract," pursuant to section 16–56–105, had also expired.

Further, we address Grand Valley's argument that the statute of limitations had been tolled. Grand Valley relies on *Bomar v. Moser*, 369 Ark. 123, 251 S.W.3d 234 (2007), for the proposition that MNB presented sufficient proof to toll the statute of limitations. Fraud suspends the statute of limitations until the party having the cause of action discovers the fraud, or should have discovered it by the exercise of reasonable diligence. *Bomar, supra.* However, as previously discussed, Grand Valley failed to prove that any potential unsound banking practices on MNB's part constituted fraud. Therefore, we hold that Grand Valley's argument is without merit. Because we dispose of the argument based on the statute of limitations, we decline to address Grand Valley's arguments concerning res judicata and collateral estoppel.

### E. ADTPA claim

Next, Grand Valley argues that the circuit court erred in dismissing its deceptive-trade-practices claim. Grand Valley repeats its allegations that MNB fraudulently concealed and misrepresented its financial condition, which is the very basis of Grand Valley's claim for a violation of the ADTPA.

MNB argues that the circuit court correctly dismissed Grand Valley's claim for violations of the ADTPA because Grand Valley, in violation of Rule 13 of the Arkansas Rules of Civil Procedure, failed to add this compulsory counterclaim to its complaint. MNB asserts that, as a result, the ADTPA claim, like Grand Valley's tort claims, was barred by res judicata and collateral estoppel. MNB also contends that Grand Valley failed to provide any authority for reversing the circuit court's decision.

Rule 13 of the Arkansas Rules of Civil Procedure requires a party to "state as a counterclaim any claim, which at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Ark. R. Civ. P. 13 (2011).

Here, Grand Valley failed to allege an ADTPA claim, pursuant to Rule 13, when it filed its counterclaim in the original proceeding. In *Grand Valley, supra,* we noted that Grand Valley filed a counterclaim alleging that MNB breached the contract and raised counts of constructive fraud, promissory and equitable estoppel, conversion, negligence, and breach of good faith and fair dealing. In an amended counterclaim, Grand Valley raised claims of breach of contract and tortious interference with business expectancy. A second amended counterclaim reasserted claims of breach of contract, negligence, and interference with contract. Therefore, we hold that the circuit court properly dismissed the ADTPA claim.

### F. Rule 11 sanctions

Lastly, Grand Valley and Terminella argue that the circuit court abused its discretion in awarding Rule 11 sanctions. Specifically, they contend that the circuit court erred in concluding that Terminella's claims against MNB were intended by the court to be dismissed with prejudice for lack of standing and that Grand Valley's and Terminella's claims for tor-

tious interference and negligence were barred by the statute of limitations.

Rule 11 of the Arkansas Rules of Civil Procedure instructs in pertinent part that

(a) Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Ark. R. Civ. P. 11(b) (2011).

We review a circuit court's determination of whether a violation of Rule 11 occurred, and what the appropriate sanction should be, under an abuse-of-discretion standard. *Crockett v. C.A.G. Invs., Inc.,* 2011 Ark. 208, 381 S.W.3d 793. In our review, we give the circuit court's determination "substantial deference." *Id.* In *Crockett,* we affirmed the circuit court's ruling that appellee was required to expend fees in defending an unwarranted breach-of-contract claim that appellant and her attorney should have known was barred by the doctrine of res judicata and, thus, a sanction of $5,670 was warranted.

Similarly, in the present case, the circuit court ruled:

[B]ecause Terminella's claims against [MNB] were dismissed with prejudice on October 20, 2008, for lack of standing and because [Grand Valley's] and Terminella's claims for tortious interference and negligence against [MNB] were barred ..., [appellants'] claims in the current litigation were not well grounded in fact, were not warranted by existing law, and there existed no good faith arguments for the extension, modification, or reversal of existing law. [Appellants'] complaint, amended complaint, and second amended complaint were filed with the intent to harass [MNB] or to cause unnecessary delay or needless increase in the cost of litigation. Therefore, this court grants [MNB's] motions for Rule 11 sanctions and awards [MNB's] attorneys' fees in the amount of $5,000 to be assessed against Terminella, [Grand Valley], and their attorney, Robert Ginnaven.

We agree with the circuit court's reasoning. Under these circumstances, Grand Valley and Terminella brought claims that were clearly barred by the statute of limitations. Based on our holding in *Crockett, supra,* we hold that the circuit court did not abuse its discretion in awarding Rule 11 sanctions. Accordingly, we affirm.

Affirmed.

BROWN, J., not participating.