2013 Ark. App. 364

**Vicki Tittle WILSON and Michael Shea Tittle, Appellants,**

v.

**Martha LINDVALL and the Estate of Alvin H. Tittle, Deceased, Appellees.**

No. CV–12–1036.

Court of Appeals of Arkansas.

May 29, 2013.

Brett D. Watson, Attorney at Law, PLLC, by: Brett D. Watson; and Sherry Burnett, Malvern, for appellants.

G. Christopher Walthall, Malvern, for appellees.

KENNETH S. HIXSON, Judge.

The decedent is Alvin H. Tittle. This case involves a dispute over his will between the decedent's natural grandson and his mother, and the decedent's stepdaughters by marriage. The appellants are Michael Shea Tittle (grandson) and Vicki Tittle Wilson (grandson's mother). The appellees are Martha Lindvall (stepdaughter) and the Estate of Alvin H. Tittle, deceased. The decedent was married to Lorene and had one son, Tommy. In 1991, the decedent's wife died. In 1994, the decedent married Beatrice Chadwick who had two daughters from a previous marriage who became the decedent's stepdaughters. The decedent's son died in 2004, survived by his wife Vicki and his son Michael. Later in 2004, the decedent changed his will to include his two stepdaughters as co-beneficiaries along with both appellants. The decedent died in 2011 at the age of ninety-four years. The trial court admitted the 2004 will into probate. The appellants, the grandson and his mother, filed a will contest alleging that the 2004 will was a product of undue influence and fraud. After a bench trial, the trial court found the 2004 will to be valid and denied appellants' motion to vacate the order admitting will to probate. Vicki and Michael now appeal from that order. We affirm.

Our standard of review in probate cases is well settled. We review probate proceedings de novo on the record, but we will not reverse the findings of fact of the trial court unless they are clearly erroneous. *Ashley v. Ashley*, 2012 Ark. App. 236, 405 S.W.3d 419. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Morton v. Patterson*, 75 Ark.App. 62, 54 S.W.3d 137 (2001). In conducting our review, we give due regard to the opportunity and superior position of the trial court to determine the credibility of the witnesses. *Foster v. Hatfield*, 2013 Ark. App. 169, 2013 WL 831126. Furthermore, while we will not overturn the probate judge's factual determinations unless they are clearly erroneous, we are free in a de novo review to reach a different result required by the law. *Id.*

The will at issue in this case was executed on November 22, 2004, when Alvin was eighty-seven years old. Alvin's will left his estate one-third to stepdaughter Martha, one-third to stepdaughter Betty, one-sixth to grandson Michael, and one-sixth to his son's surviving wife, Vicki. The will nominated Martha as executrix. The will also granted a life estate in Alvin's real estate to Beatrice, but Beatrice predeceased Alvin.

Alvin died on May 13, 2011. Pursuant to a petition filed by Martha, the trial court entered an order on May 25, 2011, admitting Alvin's will to probate and appointing Martha executrix. Vicki and Michael contested the will on June 14, 2011, alleging in their motion that Alvin was in poor health and lacked the required testamentary capacity to execute the will. They also alleged that Alvin signed the will under undue influence, fear, and duress at

a time when Martha was in a superior position and took advantage of his poor health and state of mind to benefit herself. The trial court entered the order being appealed on June 22, 2012, wherein it found that the appellants failed to prove undue influence in the making of the will and that Alvin was competent when his will was executed.

Alvin and Beatrice each had wills prepared by attorney Ed Scrimshire.[1] Attorney Scrimshire was Martha's then-boyfriend. Mr. Scrimshire's secretary, Teresa Pilcher, was one of the witnesses to the wills, and she testified that on the day Alvin came to the office to execute his will Martha was not with Alvin. Alvin advised attorney Scrimshire that he wanted to leave everything to his stepdaughters, Martha and Betty. However, attorney Scrimshire thought that Alvin should leave something to Tommy's wife, Vicki, and his grandson, Michael. At Mr. Scrimshire's suggestion, Alvin decided to leave Vicki and Michael one-sixth each of his estate and his stepdaughters one-third each. Ms. Pilcher incorporated the suggestions into the will. Ms. Pilcher testified that Alvin drove to the office that day, and he gave her no concern about his competency to execute the will. She indicated that Alvin knew who his heirs were and knew what he was doing, and she never got any impression that he was being pressured or forced to make the will.

The other witness to the will was an attorney named Bob Frazier. Mr. Frazier swore in an affidavit that, as an attorney, he always confirms that a will he is witnessing is a voluntary act by the testator. Mr. Frazier gave the opinion that Alvin had the testamentary capacity to execute the will and that Alvin did not appear to be suffering from any mental disease or under the influence of any medication.

There was evidence that, after executing his will in November 2004, Alvin entrusted stepdaughter Martha with his personal and financial affairs. In February 2005, Alvin transferred assets from one of his investment accounts into an account that he and Martha held in joint tenancy. At the time of Alvin's death, these funds were transferred to Martha. In February 2007, Alvin granted Martha a durable power of attorney. In October 2008, Alvin deeded some real property to himself and Martha. Alvin also signed a living will, which appointed Martha as his healthcare proxy to make decisions on his behalf should he become permanently unconscious.

Appellant Vicki Tittle Wilson testified at the bench trial. She stated that in the later years of Alvin's life he suffered from multiple health problems, including heart problems and COPD, and that he had poor hearing and eyesight. Vicki stated that she had several conversations with Alvin before he executed the will in November 2004. According to Vicki, Alvin told her that he already had a will but that Martha and her boyfriend, Ed Scrimshire, were constantly coming to his house and wanting him to sign papers and add more heirs to his will. Vicki testified that Martha and her boyfriend would not leave Alvin alone, which made Alvin very upset. Vicki stated that Alvin promised that he would not sign anything, but that sometime later he came to her crying and said he couldn't take it any longer.

Vicki testified that after she discovered that Alvin had executed the November 2004 will, she asked him about it and he apologized and said "they kept on and on." According to Vicki, Alvin said that Martha and her boyfriend threatened that if Alvin refused to execute the will Vicki would get

1. By the time of the trial, Ed Scrimshire had passed away.

all of his money. Based on what Alvin had told her, Vicki testified that Alvin was constantly bothered and coerced to sign the will and that it was not a voluntary act.

B.C. Edmistin and his father were long-time friends with Alvin. B.C. testified that Alvin was very close to his son, Tommy, and that Alvin was very hurt after Tommy died in June 2004. B.C. stated that sometime after Tommy died he overheard a conversation between his father and Alvin, and that Alvin complained that Martha and Ed Scrimshire were constantly bothering him to sign papers. B.C. testified that Alvin later told B.C.'s father that he finally just signed what he was told to sign. According to B.C., Alvin sounded like he was beaten down and he did not even know what he had signed.

Terri Lunsford was a caregiver to both Beatrice and Alvin during their final years. Terri testified that Alvin was "pretty much self-sustaining up to the end" and that he was competent until going into a nursing home three months before he died.

Alvin's nephew, Carl Johanson, testified that he had frequent contact with Alvin during the later years of Alvin's life. Carl testified that Alvin spoke of his relationship with Martha and said how much he appreciated her coming by his house and helping him. Carl never heard Alvin say anything derogatory about Martha. Carl testified that Alvin always took care of himself and showed no signs of being incompetent. Carl did not think that anyone could take advantage of Alvin, and he did not believe Martha could force him to sign a will.

Roy McGill testified that Alvin was his wife's uncle. Roy stated that Alvin had a warm feeling for both Martha and her sister, and that Alvin loved them like his own children. Roy never doubted Alvin's competency to take care of his affairs, and he said that Alvin was still able to drive a car until three months before he died. Roy did not think that Martha or anyone else could force Alvin to do something he did not want to do. Roy said that they discussed the will about eight months before Alvin died, and that Alvin accurately described the shares his beneficiaries were to receive under the will.

Martha's sister, Betty, testified that she was not aware that Alvin had made her or Martha beneficiaries in his will until after he died. Betty stated that she never saw anyone take advantage of Alvin, and said that nobody could make him do something he did not want to do.

James Bennett is an investment broker who had done business with Alvin since 1991. James testified that when Alvin came to him wanting to transfer one of his accounts to himself and Martha in February 2005, that account was worth $89,000. When that transaction occurred, Martha knew about it but was not present. James stated that Alvin told him that Martha had assisted him and was good to him, and Alvin was not concerned that Martha had access to the money in the account. The records reflected that Martha never made any withdrawals from the account. James never thought that Alvin was under any stress, and he believed that Alvin was competent and knew completely what he was doing when he made the transaction.

In this appeal, appellants Vicki and Michael argue that the trial court erred in failing to place the burden of proof on Martha to prove that Alvin was free from undue influence in executing the will, and appellants also argue that undue influence was demonstrated by the proof. It has long been the law in Arkansas that a party challenging the validity of a will must typically prove by a preponderance of the evidence that the testator lacked the requisite mental capacity or that the testator was

the victim of undue influence when the will was executed. *Pyle v. Sayers,* 344 Ark. 354, 39 S.W.3d 774 (2001).

■■■ We hold that the trial court did not clearly err in finding that the appellants failed to prove undue influence in the making of the will. By the time Alvin executed the will in November 2004, he had been married to Beatrice and the stepfather to Martha and Betty for more than ten years. There was, as appellants assert, testimony that Alvin had made comments about being badgered by Martha and her boyfriend about signing papers. However, there was testimony from other witnesses demonstrating that Alvin was competent, independent, and not susceptible to being taken advantage of or influenced against his will. There was also testimony that Alvin had a loving relationship with both Martha and Betty, and that he appreciated Martha for helping him. Alvin's appreciation of, and trust in, Martha was demonstrated by numerous acts in the years following his execution of the will when he placed her on an investment account, deeded property to himself and Martha, and gave her power of attorney. The witnesses attesting the will thought that Alvin was competent and not under any pressure, and Martha was not present when he signed the will. The influence that the law condemns is not the legitimate influence that springs from natural affection, but the malign influence that results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property. *Pyle, supra.* On this record, leaving the credibility decisions to the trial court, we are not left with a firm conviction that a mistake has been committed.

■■■ The appellants also contend on appeal that when the person benefiting from the will also engages in drafting or procuring the will, a rebuttable presumption of undue influence arises and creates a burden for the proponent of the will to prove beyond a reasonable doubt that the testator had both the testamentary capacity as well as the freedom from undue influence to execute a valid will. The appellants in this case contend that there was unrebutted testimony that Martha and her then-boyfriend, Ed Scrimshire, repeatedly went to Alvin's house and pressured him into executing a will until he finally succumbed. Because Martha was a beneficiary and procured the will, appellants assert that it was her burden to prove beyond a reasonable doubt that Alvin was free from undue influence, and appellants further assert that Martha failed to meet that burden. However, we conclude that the appellants' argument concerning procurement and the shifting of the burden of proof is not preserved for review. It is well settled that our appellate courts will not consider arguments raised for the first time on appeal. *Scudder v. Ramsey,* 2013 Ark. 115, 426 S.W.3d 427. Moreover, when an appellant fails to obtain a ruling on an issue from the trial court, his or her argument is not preserved for appeal because there is no decision of the trial court for this court to review. *Ark. Wildlife Fed'n v. Ark. Soil & Water Conservation Comm'n,* 366 Ark. 50, 233 S.W.3d 615 (2006).

In the appellants' contest of will and motion to vacate the order admitting the will to probate and appointing executrix, the appellants alleged that the will was invalid as a result of a lack of testamentary capacity and undue influence. However, the appellants did not allege that the burden of proof shifted to Martha because she procured the will, nor did they argue it at trial. In appellants' counsel's opening remarks prior to trial, their counsel stated:

> I'm going to try to be very brief, although as the court is likely aware, that we have the burden of proving by a

preponderance of the evidence, your honor, that the testator lacked mental capacity at the time the will was executed or that the testator acted under undue influence. And so that is the reason that I have a few more witnesses than the [appellees' counsel] does.

Because the appellants never alleged below that Martha procured the will, and because they expressly conceded at trial that they had the burden of proving undue influence, we cannot now consider their argument that the burden should have been placed on Martha to show beyond a reasonable doubt that the will was not the result of undue influence. And because the procurement issue was not put to the trial court, the trial court did not make any ruling as to whether Martha procured the will. Therefore, there is no decision on the issue of procurement for this court to review.

Affirmed.

GLADWIN, C.J., and BROWN, J., agree.